# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 62

### APRIL TERM, A.D. 2017

### May 31, 2017

P & N INVESTMENTS, LLC, d/b/a
DICKEY'S BARBECUE PIT,

Appellant
(Plaintiff),

v.                                                         S-16-0244

FRONTIER MALL ASSOCIATES, LP,

Appellee
(Defendant).

---

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
    Tara B. Nethercott, Woodhouse Roden Nethercott, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
    Rick A. Thompson and Lucas E. Buckley, Hathaway & Kunz, LLP, Cheyenne, Wyoming. Argument by Mr. Buckley.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

*FOX, J., delivers the opinion of the Court; Hill, J., files a dissenting opinion, in which DAVIS, J., joins.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Appellant P & N Investments, LLC (P & N) obtained a franchise for a Dickey's Barbeque Pit restaurant to be operated in Frontier Mall in Cheyenne, Wyoming.  P & N entered into a lease with Frontier Mall Associates, LP (the Mall), which required the Mall to pay P & N a finish allowance when certain provisions had been satisfied.  P & N then entered into a contract with a general contractor, which P & N eventually paid in full for the work done.  The general contractor, however, did not pay all the subcontractors.  P & N and the Mall now dispute whether the lease provision requiring that liens be released and work be paid for was satisfied.  The district court ruled that the lease language is unambiguous, and, because it is undisputed that subcontractors have not been paid and have not provided evidence regarding satisfaction or waiver of any liens, granted summary judgment in favor of the Mall.  We affirm.

*ISSUE*

[¶2]    We rephrase the issue:  Do the unambiguous terms of the lease require evidence that subcontractors and the general contractor have been paid in full before the Mall is obligated to pay the finish allowance?

*FACTS*

[¶3]    P & N entered into a ten-year Shopping Center Lease (Lease) with the Mall for approximately 2500 square feet in Frontier Mall in which to operate a Dickey's Barbeque Pit franchise.  The Lease allowed P & N to renovate the space to suit its use as a restaurant.  P & N retained East Rochester, New York contractor, CCI Builders and Developers, Inc. (CCI), to act as the general contractor on the project.  CCI, in turn, hired a number of local subcontractors to provide materials and perform work on the project.

[¶4]    The Lease provided that upon satisfaction of ten express conditions, the Mall would pay P & N a tenant finish allowance of $150,180.  The condition that lies at the heart of this dispute requires P & N to provide the Mall satisfactory evidence from P & N's general contractor and subcontractors that any liens have been satisfied or waived and an affidavit that "all work has been paid for" before the finish allowance becomes due.

[¶5]    Work was completed on the project in September 2014 and the restaurant opened on schedule.  For the purposes of this appeal, it is undisputed that the total cost of construction was $308,929.55 and that P & N paid CCI $308,929.55.  P & N submitted an affidavit to the Mall stating:

1

6. The total cost of construction was three hundred eight thousand nine hundred twenty nine and 55/100 dollars ($308,929.55). The cost was paid in full by me [Nathaniel Schott, owner of P & N] to CCI.

7. The construction was completed in September 2014.

7. [sic] No liens have been filed on the property or may be filed as a result of construction on the leased premises.

It is also undisputed that CCI did not pay numerous subcontractors a total of approximately $90,000 for work they performed on or materials they provided to the project.[1]

[¶6]    Under Wyoming law, contractors have one hundred fifty days from the date of the completion of their work to assert a lien.[2]  Thus, CCI and the subcontractors had until February 27, 2015, at the latest, to assert a lien against the property.  It is undisputed that no liens have been filed against the property.

[¶7]    Because the Mall has not paid the finish allowance, P & N sued the Mall, asserting claims of breach of contract and unjust enrichment, and seeking declaratory judgment that the Mall must pay the tenant finish allowance because P & N has met the conditions for that payment set forth in the Lease.  The Mall counterclaimed, seeking a determination that the Lease terms have not been satisfied and that the requirement to pay the finish allowance has not been triggered.  The parties filed cross-motions for summary judgment.  The district court concluded that the disputed contract language is unambiguous and requires the submission of evidence of lien release satisfactory to the Mall from the general contractor and the subcontractors and an affidavit that all

---

[1] CCI is not a party to this action, perhaps because of the arbitration clause in its contract with P & N requiring that "[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association . . . ."

[2] Wyo. Stat. Ann. § 29-2-106(a) (LexisNexis 2015) provides:

> (a) Except as provided in subsection (c) of this section, any contractor asserting a lien under this chapter shall file his lien statement within one hundred fifty (150) days and every other person asserting a lien under this chapter shall file within one hundred twenty (120) days:
>> (i) Of the earlier of:
>>> (A)   After the last day when work was performed or materials furnished under contract;
>>> (B)   From the date of substantial completion of the project on which work was performed or materials were furnished under contract; or
>> (ii)   With respect to a subcontractor, after the last day he performed work at the direction of the contractor or other person authorized to provide direction.

outstanding amounts owed for the construction, including amounts owed to subcontractors, have been paid. Because there is no dispute that neither of these requirements has been met, the district court granted summary judgment in favor of the Mall. P & N appeals.

## STANDARD OF REVIEW

[¶8]    We review a grant of summary judgment deciding a question of law de novo. *Anadarko Land Corp. v. Family Tree Corp.*, 2017 WY 24, ¶ 15, 389 P.3d 1218, 1223 (Wyo. 2017); *Williams v. Sundstrom*, 2016 WY 122, ¶ 17, 385 P.3d 789, 793 (Wyo. 2016). We use the same materials and follow the same standards as the district court. *Leeks Canyon Ranch, LLC v. Callahan River Ranch, LLC*, 2014 WY 62, ¶ 12, 327 P.3d 732, 737 (Wyo. 2014). Summary judgment can be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c).

[¶9]    When summary judgment is based on interpretation of a contract:

> The initial question of whether the contract is capable of being understood in only one way is a question of law for the court. If the court determines that the contract is capable of being understood in only one way, then the language used in the contract expresses and controls the intent of the parties. In such case, the next question, what is that understanding or meaning, is also a question of law. When we review the district court's summary judgment decisions that a contract is capable of being understood in only one way and what that understanding is, we accord no deference to those decisions.
> *Claman v. Popp*, 2012 WY 92, ¶ 23, 279 P.3d 1003, 1012 (Wyo. 2012) (quoting *Union Pacific Railroad Co. v. Caballo Coal Co.*, 2011 WY 24, ¶ 13, 246 P.3d 867, 871 (Wyo. 2011)).

*Leeks Canyon Ranch, LLC*, 2014 WY 62, ¶ 12, 327 P.3d at 737.

## DISCUSSION

[¶10]  Our "ultimate goal when interpreting a contract 'is to discern the intention of the parties to the document.'" *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 6, 185 P.3d 1259, 1261 (Wyo. 2008) (*Comet I*) (quoting *Mullinnix, LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 22, 126 P.3d 909, 919 (Wyo. 2006)). In so doing, we first consider the "specific terms of the contract and give them their plain and ordinary meaning." *Id.*

[¶11]   Section 1.5(b) of exhibit B to the Lease provides:

> Tenant shall have furnished evidence satisfactory to Landlord from its general contractor and any subcontractors that any and all liens that have been, or may be, filed have been satisfied of record or waived and an affidavit that all work has been paid for[.]

Both parties contend that these terms are unambiguous, but they disagree as to the meaning.  A disagreement between the parties as to the meaning of the terms of a contract does not give rise to an ambiguity.  *Omohundro v. Sullivan*, 2009 WY 38, ¶ 9, 202 P.3d 1077, 1081 (Wyo. 2009).  We agree with the district court that the language of this provision is unambiguous.  It is not "obscure in its meaning, because of indefiniteness of expression, or because a double meaning is present."  *Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo.*, 612 P.2d 463, 465 (Wyo. 1980) (citation omitted); *see also Comet I*, 2008 WY 69, ¶ 11, 185 P.3d at 1263.

[¶12]   Our settled rules of contract interpretation require that once we determine a contract is unambiguous, we determine the intention of the parties from the words of the contract and the context in which it was written.  *Hunter v. Reece*, 2011 WY 97, ¶ 17, 253 P.3d 497, 502 (Wyo. 2011); *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2010 WY 82, ¶ 13, 239 P.3d 382, 386 (Wyo. 2010) (*Comet II)*; *Amoco Prod. Co.*, 612 P.2d at 465.  We consider the contract as a whole and interpretation is a matter of law.  *Id.*

[¶13]   Section 1.5, read in its entirety, indicates that the parties' overarching intent was to ensure that all those who worked on the P & N job were paid in full, and evidence of that was to be obtained from several sources, including directly from the contractor and subcontractors, and by affidavit from P & N.  "Our rules of interpretation require that we interpret a contract as a whole, reading each provision in light of all the others to find their plain meaning."  *Pope v. Rosenberg*, 2015 WY 142, ¶ 20, 361 P.3d 824, 830 (Wyo. 2015) (citation omitted).  The disputed language sets forth two requirements that must be met before the Mall is obligated to pay the finish allowance.

[¶14]   The first portion of section 1.5(b) requires that P & N furnish "evidence satisfactory to [the Mall] from its general contractor and any subcontractors that any and all liens that have been, or may be, filed have been satisfied of record or waived" before it is entitled to payment of the finish allowance.  P & N argues that since the statutory time limit for filing a lien has passed, liens can no longer be filed and thus the terms of this provision have, in essence, been met.

[¶15]   We begin by looking at the plain language of the provision.  It requires that (1) P & N provide to the Mall evidence from the general and subcontractors that any liens

4

filed by the general and subcontractors have been satisfied and that all other liens that may be filed have been either satisfied or waived, and (2) the Mall must be satisfied with the evidence provided. P & N claims the intent of this provision was to make sure there were no liens on the property, and that the Mall engaged in bad faith when it refused to accept P & N's statement that no liens have been filed and any other liens have been waived, and instead insisted P & N satisfy it with written lien waivers from CCI and the subcontractors. Every contract imposes on the parties a duty of good faith and fair dealing in its performance and enforcement. *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 2001 WY 23, ¶ 18, 18 P.3d 645, 652 (Wyo. 2001). While "[s]ubterfuges and evasions" can violate the obligation of good faith, *id*. (quoting Restatement (Second) of Contracts § 205, comment d (1981)), courts have held that the insistence on compliance with the terms of a contract will not rise to the level of bad faith. *See Thalle Constr. Co. v. City of New York*, 256 A.D.2d 157 (NY App. Div. 1998). That is particularly true here, where one of the terms of the contract gives the Mall discretion to determine whether the evidence of lien release or waiver is satisfactory.

[¶16] While we cannot conclude that the Mall acted in bad faith, we would be hard pressed to conclude that, as a practical matter, the release or waiver requirement has not been satisfied by the passage of time. However, the second part of section 1.5(b) requires that "all work" be paid for before P & N is entitled to the finish allowance. The Mall argues that this provision is unambiguous and that "all work" includes work performed by not just the general contractor, but the subcontractors as well. Because it is undisputed that numerous subcontractors have not been paid, the Mall claims that this provision has not been satisfied. P & N also contends that the Lease provision is unambiguous, but claims it requires only that P & N pay the full cost of construction to CCI and provide an affidavit to that effect to the Mall.

[¶17] We afford words in a contract the plain meaning that a reasonable person would give to them. *Hunter*, 2011 WY 97, ¶ 17, 253, P.3d at 502. "All" means everything. In *Caballo Coal Company v. Fidelity Exploration & Production Company*, 2004 WY 6, ¶ 4, 84 P.3d 311, 313 (Wyo. 2004), we considered the meaning of deed language granting coal "[t]ogether with *all* of Grantor's undivided interest in and to *all* other minerals, metallic or nonmetallic contained in or associated with" coal deposits conveyed coalbed methane gas to the grantee. (Emphasis added.) We concluded that the "clear language" of the deeds "expressly convey[ed] ownership of *all* metallic and nonmetallic minerals," *id*. at ¶ 17, 84 P.3d at 318 (emphasis in original), and that a "reasonable interpretation of the intent of the grantors expressed within the deeds is that [they] simply intended to convey everything located within the coal seam." *Id*. at ¶ 19, 84 P.3d at 318. Likewise, "all work," or the whole amount of work, on this project includes the work performed by the subcontractors. Thus, we find the language of section 1.5(b) requiring "all work" to be paid for is unambiguous and requires every individual component of work to be paid before the finish allowance becomes due.

5

[¶18]   The affidavit P & N submitted to the Mall stated:

> The total cost of the construction was three hundred eight thousand nine hundred twenty nine and 55/100 dollars ($308,929.55).  The cost was paid in full by me to CCI.

P & N claims that the affidavit complies with the terms of section 1.5(b), but it does not say that "all work has been paid for," as required by the Lease.  Had the parties intended that only the general contractor needed to be paid in order for the finish allowance to come due, they could have used language to that effect, such as, "the general contractor has been paid in full."  Instead, they used the term "all work."  We will not "rewrite contracts under the guise of interpretation . . . ."  *Comet I*, 2008 WY 69, ¶ 11, 185 P.3d at 1263.  We interpret this provision according to its clear language, and conclude that the parties intended to include work by subcontractors on the project as work that must be paid for before the finish allowance became due.  Because all work has not been paid for on this project, the Mall was entitled to summary judgment.

[¶19]   P & N asks us to examine the terms of its agreement with CCI to determine the intent of the disputed language in its contract with the Mall.  "While unambiguous contract language is generally interpreted without resort to extrinsic evidence, it need not be interpreted in a vacuum."  11 Samuel Williston, *Treatise on the Law of Contracts* § 30:6, at 108 (Richard A. Lord ed., 4th ed. 2012); *see also Pokorny v. Salas*, 2003 WY 159, ¶ 23, 81 P.3d 171, 177-78 (Wyo. 2003).  "We consider the language in the context in which it was written, looking to the surrounding circumstances, the subject matter, and the purpose of the agreement to ascertain the intent of the parties at the time the agreement was made."  *Comet II,* 2010 WY 82, ¶ 13, 239 P.3d at 386.[3]  However, we have rejected the use of extrinsic evidence to determine whether a contract is ambiguous:

> The ambiguity which justifies examining extrinsic evidence must exist . . . in the language of the document itself.  It cannot be found in the subsequent events or conduct of the parties, matters which are extrinsic evidence.  ***The suggestion***

---

[3] The identity of the party drafting the contract is one of those surrounding circumstances that we may consider.  *See* Williston, *supra*, § 30:5, at 84 ("Extrinsic evidence properly considered in deciding whether the contract is ambiguous may include . . . whether one of the parties prepared the instrument, so that the language should be construed most strongly against it."); *see Nuhome Invs., LLC v. Weller*, 2003 WY 171, ¶ 17, 81 P.3d 940, 947 (Wyo. 2003) (considering identity of drafter to determine whether unequal bargaining power existed); *Collins v. Finnell*, 2001 WY 74, ¶ 19, 29 P.3d 93, 100 (Wyo. 2001) (ambiguity is construed against the drafter); *Emulsified Asphalt, Inc. of Wyo. v. Transp. Comm'n of Wyo.*, 970 P.2d 858, 864 (Wyo. 1998) (same).  It is unclear from the record which party drafted the Lease, however, the Lease itself contains many deletions and additions, indicating that a significant number of changes had been made from its original version.

6

***that one should examine extrinsic evidence to determine***
***whether extrinsic evidence may be examined is circuitous.***

*Wolter v. Equitable Res. Energy Co., Western Region*, 979 P.2d 948, 952 (Wyo. 1999) (citation omitted and emphasis in original); *see also Thornock v PacifiCorp.*, 2016 WY 93, ¶ 20, 379 P.3d 175, 181 (Wyo. 2016).

[¶20]  P & N emphasizes the terms of its agreement with CCI prohibiting P & N from communicating with subcontractors.  It argues that this prohibition is further evidence of P & N's intent that only CCI must be paid before the finish allowance is due because P & N had no contracts with or invoices from the subcontractors.  "A party's subjective intent is not relevant in contract interpretation cases because we use an objective approach to interpret contracts."  *Omohundro*, 2009 WY 38, ¶¶ 24-25, 202 P.3d at 1085 (declining to consider affidavit regarding parties' subjective intent regarding covenants).  Moreover, we note that P & N entered into the Lease with the Mall on February 11, 2014, while its contract with CCI is dated May 5, 2014.  Thus, even if we were to consider the terms of the CCI contract, we are not persuaded that those terms impacted P & N's intent as it entered into its contract with the Mall.

[¶21]  P & N also points to the standard and custom in the construction industry that the general contractor is responsible for paying the subcontractors in support of its argument that the intent was only to require P & N to pay CCI, citing Black's Law Dictionary's definition of general contractor:

> One who contracts for the construction of an entire building or project, rather than for a portion of the work.  The general contractor hires subcontractors, coordinates all work, and is responsible for payment to the subcontractors.

Black's Law Dictionary 683 (6th ed. 1990).  P & N argues that because it paid CCI, the general contractor, it paid for all work and it was CCI's responsibility to pay the subcontractors.  P & N claims that because it has clean hands, it should not be punished by not receiving the finish allowance or by having to pay the subcontractors directly (when it has already paid CCI) in order to receive the finish allowance.[4]

[¶22]  We cannot rewrite the terms of the Lease.  *Brashear v. Richardson Constr., Inc.*, 10 P.3d 1115, 1118 (Wyo. 2000).  "[T]he question whether a bargain is smart or foolish, or economically efficient or disastrous, is not ordinarily a legitimate subject of judicial inquiry."  Williston, *supra*, § 31:5, at 455; *see Sowerwine v. Keith*, 997 P.2d 1018, 1020-21 (Wyo. 2000).  "[C]ourts are not at liberty to rescue parties from the consequences of

---

[4] In their briefs, the parties dispute whether the Mall could or could not be sued by unpaid subcontractors under a variety of legal theories.  That question is not before the Court and is not relevant to the unambiguous terms of the Lease.

their unwisely made bargains and we cannot rewrite the contract under the guise of judicial construction." *Hunter*, 2011 WY 97, ¶ 23, 253 P.3d at 503 (internal quotation marks and citations omitted).

[¶23]  P & N was in a better position than the Mall to ensure subcontractors were paid. Accordingly, the Lease put the burden on P & N to ensure that all work was paid for, and it specifically required P & N to provide an affidavit to that effect.  Read together, the terms of section 1.5(b) indicate that the intent of the parties was for the general and the subcontractors to be paid, and the affidavit stating that CCI had been paid did not satisfy that requirement.

## *CONCLUSION*

[¶24]  The Lease provision requiring P & N to furnish "evidence satisfactory to [the Mall] from its general contractor and any subcontractors that any and all liens that have been, or may be, filed have been satisfied of record or waived" and an "affidavit that all work has been paid for" before the finish allowance becomes due is unambiguous.  Even if we were to conclude that the passage of time has fulfilled the lien satisfaction and waiver requirement, all work completed by the subcontractors has not been paid for. Accordingly, P & N is not entitled to the finish allowance from the Mall.  The district court's summary judgment in favor of the Mall is affirmed.

**HILL, Justice**, dissenting, with whom **DAVIS, Justice**, joins.

[¶25]  I agree that the lease between the Mall and P & N is unambiguous, but because I interpret the lease differently from the majority opinion, I respectfully dissent.

>    The disputed lease provision reads:

>    >    Section 1.5  Landlord's Contribution to Construction of Leased Premises.  Of the costs incurred by Tenant in constructing or improving qualified long-term real property for use in Tenant's trade or business at the Leased Premises (the "Leasehold Improvements"), Landlord agrees to pay to Tenant the lesser of (a) the actual cost of said construction of or improvements to said real property made in accordance with this Exhibit, or (b) the sum of **One Hundred Fifty Thousand One Hundred Eighty and 00/100 Dollars ($150,180.00)**, less any sums owed to Landlord by Tenant under this Lease or this Exhibit, and the excess, if any, shall be paid by Tenant.  Landlord's obligations under the preceding sentence shall not bind any Mortgagee Party of the Shopping Center nor any party acquiring title through or under any such Mortgage Party.  The sum to be paid by Landlord hereunder shall be paid by check to Tenant after all of the following conditions shall have been satisfied:

>    >    * * *

>    >    (b)  Tenant shall have furnished evidence satisfactory to Landlord from its general contractor and any subcontractors that any and all liens that have been, or may be, filed have been satisfied of record or waived and an affidavit that all work has been paid for[.]

[¶26]  I view this term as imposing two separate but related obligations on P & N, as Tenant.  First, P & N is obligated to furnish evidence satisfactory to the Mall from its general contractor and any subcontractors that any and all liens that have been filed, or may be filed, have been satisfied of record or waived.  Second, P & N is obligated to furnish an affidavit that all work has been paid for.

[¶27]  With respect to the first obligation, I view this as an obligation to perform that is subject to a condition precedent.  A condition precedent is "an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises." *Mad River Boat Trips, Inc. v. Jackson Hole Whitewater, Inc.*, 803 P.2d 366, 368 (Wyo. 1990) (quoting *Robert W. Anderson Housewrecking and Excavating, Inc.*

9

*v. Board of Trustees, School District No. 25, Fremont County, Wyoming*, 681 P.2d 1326, 1331 (Wyo. 1984)). A condition precedent need not be labeled as such in a contract, and what is instead controlling is whether the contract language creates a contingency on which performance depends. *Id*. at 367-68 (finding Forest Service approval to be a condition precedent to defendant's obligation to transfer special use permit to plaintiff even though Forest Service approval was not contained in section of contract labeled "Conditions Precedent").

[¶28] In my view, P & N's obligation to furnish evidence satisfactory to the Mall was conditioned on the requirement that at least one of two events occurred: 1) a lien was filed against the Mall's property; or 2) a lien may be filed against the Mall's property. It is undisputed that neither event occurred. No lien was filed against the Mall's property in relation to P & N's project, and because the time for any lien to be filed has expired, no lien may be filed. The condition precedent to P & N's obligation to perform did not come to pass, and P & N was therefore under no obligation to provide evidence of any type concerning lien satisfaction or lien waivers.

[¶29] P & N's second obligation is to furnish "an affidavit that all work has been paid for." I do not agree that this provision should be read to refer back to both subcontractors and general contractors. The term requires that P & N furnish **an affidavit**. Because it is P & N that is to provide the affidavit, I believe a reasonable reading of the requirement is one that requires P & N to attest that it has performed its obligation to pay for all work. I do not agree the language may be extended to add a requirement that P & N attest that the general contractor has also performed all of its separate payment obligations.

[¶30] This interpretation is borne out by the requirement this provision imposes with regard to liens against the Mall's property. With respect to liens that have been or may be filed, the provision requires that P & N furnish evidence that such liens have been either satisfied *or waived*. A lien waiver suggests that there are amounts owing to the party that has agreed to waive its lien, which is inconsistent with the meaning the Mall asks this Court to give the phrase "all work has been paid for." If "all work has been paid for" means, as the Mall contends, that the general contractor and all subcontractors are satisfied, there would be no occasion to need or require a lien waiver. The Mall's willingness to accept a lien waiver rather than satisfaction of that lien simply cannot be reconciled with its insistence that "all work has been paid for" means P & N must attest not only that it has paid the amounts it was obligated to pay but also that there are no outstanding claims against the general contractor.

[¶31] The record of nonpayment to the subcontractors on this project is troubling. It is undisputed, however, that P & N paid CCI, the general contractor, for all the work done on the project. P & N did not breach its payment obligations under its contract with CCI, and P & N had no contracts with the subcontractors. Any breach resulting in underpayment of subcontractors was a breach of CCI's separate contracts with the

10

subcontractors, contracts to which P & N was not a party. I am unwilling to read section 1.5(b) of the lease to make P & N a guarantor under the separate contracts between CCI and the subcontractors. I believe the more reasonable interpretation to give section 1.5(b), and the one that avoids inconsistencies between its terms, is to interpret the requirement that P & N furnish an affidavit "that all work has been paid for" to mean P & N must attest that it, the affiant, has paid for all work it was obligated to pay for.

[¶32] My final observation relates to the opening paragraph of section 1.5. In that paragraph, the Mall promises to P & N a payment of $150,180.00, upon satisfaction of the enumerated conditions. That opening paragraph also put P & N on notice, however, that the Mall would decrease that amount by any outstanding sums owed to the Mall by P & N under the terms of the lease. It seems to me that the Mall could have added similar language regarding outstanding amounts owing to subcontractors, if its intent was to ensure not only that P & N met its payment obligations, but that all subcontractors were paid in full. This certainly would have been a more transparent imposition of that payment obligation.