# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 130

### OCTOBER TERM, A.D. 2024

**December 6, 2024**

JOSH VAN VLACK,

Appellant
(Plaintiff),

v.                                                        S-24-0109

EMMA VAN VLACK,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Appellant:*
   Toni E. Hartzel, Lance & Hall LLP, Cheyenne, Wyoming.

*Representing Appellee:*
   Linda J. Steiner and Abigail E. Fournier, Steiner, Fornier & Zook, LLC, Cheyenne, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]   In *Van Vlack v. Van Vlack*, 2023 WY 104, 537 P.3d 751 (Wyo. 2023) (*Van Vlack I*), we found a Stipulated Final Decree of Divorce (Stipulated Decree) was ambiguous. We then remanded the case to the district court to conduct an evidentiary hearing to discern the parties' intent surrounding the division of equity in the marital residence. After the evidentiary hearing, the district court entered an order awarding damages representing half the equity in the home to Ms. Van Vlack (Wife). Mr. Van Vlack (Husband) appealed, asserting the district court erred in entering the order under Wyoming Rule of Civil Procedure (W.R.C.P.) 60 and failed to sufficiently state its findings and conclusions under W.R.C.P. 52(a). We affirm.

## *ISSUES*

[¶2]   The parties raised three issues on appeal, which we rephrase as:

1.  Did the district court err when it clarified the Stipulated Decree consistent with the parties' intent pursuant to W.R.C.P. 60(a)?

2.  Does the Corrected [Second] Order Granting Relief contain sufficiently articulated findings and conclusions to satisfy the requirements of W.R.C.P. 52(a)?

## *FACTS*

[¶3]   Husband and Wife married on September 15, 2012. Two years later, they purchased a residential property at 1324 Bobcat Trail on the outskirts of Cheyenne, Wyoming.

[¶4]   Both parties were listed on the mortgage and deed. During their marriage, they shared the residence and contributed their earnings to a joint account used to pay the mortgage. In 2019, they secured a $64,000 home equity line of credit on the property and in September 2021, they refinanced the home.

[¶5]   In December 2021, Husband and Wife separated and, without attorneys, discussed the division of their marital property. They also secured two appraisals for 1324 Bobcat Trail. A March 2022 appraisal valued the home at $406,000. An April 2022 appraisal estimated the home was worth $528,500.

[¶6]   Wife retained counsel to draft a stipulated divorce decree for the parties. Husband reviewed the draft with his own counsel and both parties signed the agreement. The district court granted the parties a divorce and entered the Stipulated Decree on June 24, 2022.

1

[¶7]    The terms of the Stipulated Decree allowed Husband and Wife to retain personal property used by them and all bank accounts, credit card debt, and retirement in their individual names.  Husband was awarded a Ram truck, a Jayco camper, and a road grader. Wife received a Jeep Cherokee and a $6,000 equalization payment for the camper and road grader.

[¶8]    Paragraph 17 of the Stipulated Decree provides for the disposition of the parties' marital home and remains the subject of this dispute.  It provides:

> a.  The parties own real property at 1324 Bobcat Trail, Cheyenne, Wyoming ….
>
>> i.   This real property is awarded to [Husband] as his sole and separate property and [Husband] shall hold [Wife] harmless thereon.
>>
>> ii.  [Husband] shall refinance the property in his separate name within ninety (90) days of the entry of this *Decree*.  If [he] is unable to refinance the property into his name in that time frame, the property shall be immediately listed for sale.  [Wife] shall be entitled to one half (1/2) the net proceeds from the home and she shall receive her portion owing directly from the title company.
>>
>> iii. [Husband] is solely liable for the mortgage and any other debts or liabilities associated with the home and [Husband] shall hold [Wife] harmless thereon.

[¶9]    After their divorce, Husband provided the Stipulated Decree to his mortgage lender to refinance 1324 Bobcat Trail and remove Wife from the title.  Although Husband relied on the April 2022 appraisal during the refinancing process, he did not refinance the home for the full value.  Instead, Husband assumed $315,853.92 in debt (including the mortgage and the 2019 home equity line of credit) and closing costs as a result of the refinance.  The refinance, therefore, resulted in $212,646.80 in equity in the home based on the April 2022 appraisal.  Because Husband only refinanced the existing debt on the home rather than its full appraised value, he did not receive any funds and no payment was made to Wife. Husband also did not separately pay Wife for her share of the equity in the home.

[¶10]  Wife filed a motion to set aside the Stipulated Decree or, in the alternative, grant her relief from the Stipulated Decree.  She claimed the Stipulated Decree "is clear that

2

[Wife] was awarded one half (1/2) of the net proceeds regardless of [whether] the home was sold or refinanced." Wife sought relief under Rule 60(b)(1) and 60(b)(2), asserting the Stipulated Decree "needs to be clarified to accurately reflect the parties' agreement on the division of net equity after the sale *or* refinance of the marital home." Husband claimed Paragraph 17 unambiguously did not require him to pay half the home *equity* if he refinanced and instead required him to pay Wife the *net proceeds* only if he sold the home.

[¶11]   The district court held a hearing on the motion and declined to admit parol evidence. Instead, the district court relied on the arguments of counsel and the existing record. On October 25, 2022, the district court issued its decision letter granting Wife relief under Rule 60. The district court did not find an ambiguity in the Stipulated Decree and stated "[t]here is no reason which appears in the Decree, the pleadings, or the arguments of counsel that lend an ounce of logic to an interpretation that leaves a $120,000 property division up to the chances of [Husband] qualifying for refinancing." It then ruled that "paragraph 17.a.ii is corrected to reflect that any equity recognized through sale *or* refinance of the home is to be equally divided between [Husband] and [Wife]." The district court also directed Wife to submit a draft order incorporating the decision letter.

[¶12]   The parties did not agree on a proposed order. Husband objected to Wife's proposed order because it referenced an amount of equity not supported by the record, and there was no evidence the parties agreed on the amount of equity in the property. He also argued that when the refinance was finalized, no equity was realized. The district court ultimately adopted Wife's proposed order and entered an Order Granting Relief from the Stipulated Final Decree of Divorce (Order Granting Relief). In the Order Granting Relief, the district court again stated it was "correct[ing]" Paragraph 17. Husband appealed.

[¶13] In *Van Vlack I,* this Court considered whether the district court erred when it determined the Stipulated Decree was unambiguous and whether the record contained sufficient evidence to support the Order Granting Relief. *Van Vlack,* ¶ 2, 537 P.3d at 754. We acknowledged there are two possible interpretations of Paragraph 17 and found the Stipulated Decree is ambiguous as to whether Husband was required to provide Wife with half the net proceeds in the event of refinance. *Id.*, ¶ 26, 537 P.3d at 759. Recognizing clarification of the Stipulated Decree rested on a record sufficient to support the court's interpretation of the parties' intent, we found the record did not contain such evidence and remanded the case for an evidentiary hearing. *Id.,* ¶¶ 33-34, 537 P.3d at 760. Separately, we addressed Husband's contention that the district court improperly relied upon Rule 60(a) in the *Order Granting Relief* because it modified the Stipulated Decree instead of simply correcting a clerical mistake.[1]  *Id.*, ¶¶ 27-34, 537 P.3d at 759-60. While we again

---

[1] The district court did not expressly mention Rule 60(a) in the Order Granting Relief. Instead, it stated "There is a basis for relief under Rule 60(b)(b)(1) [sic] due to an inadvertence in drafting, and it is fair to conclude mistake and inadvertence." In addition, in its Decision Letter the district court indicated it was ordering a correction based upon inadvertence or "a clear clerical mistake." Recognizing the district court

3

concluded there was insufficient evidence to ascertain the parties' intent, we found no issue with the district court's reliance on Rule 60(a), finding "any mistake was not the deliberate result of judicial reasoning and determination." *Id.*, ¶ 32, 537 P.3d at 760.

[¶14] Prior to the evidentiary hearing on remand, Husband filed a written request for findings of fact and conclusions of law pursuant to W.R.C.P. 52(a). At the hearing, the district court heard testimony from Wife, Husband, the assessors, and Husband's mortgage lender. The parties also offered into evidence relevant appraisal documents and mortgage statements for 1324 Bobcat Trail. Wife testified the parties contributed to a joint checking and savings account which paid their mortgage. Wife also stated she asked Husband to secure a second appraisal after the March 2022 appraisal came back $80,000 less than the appraisal from their September 2021 refinance.

[¶15] Wife testified the parties were unrepresented during their discussions about the divorce and division of the home. According to Wife, the parties intended to share not just the proceeds from a sale of 1324 Bobcat Trail, but also its equity:

| Q: | [W]hen you and [Husband] ultimately separated did you have conversations about what would happen with the equity of the home? |
| Wife: | Yes, ma'am. |
| Q: | And what was that conversation? |
| Wife: | That [Husband] would maintain residence in the home, but that I would receive 50 percent of the equity or proceeds of the property. |
| Q: | Ok. And so you took equity and proceeds to mean the same thing? |
| Wife: | Yes, I did. |
| Q: | Is that why you signed the divorce decree as it was? |
| Wife: | Yes, ma'am. |

[¶16] Husband confirmed that during their marriage the parties contributed to the joint account used to pay the mortgage and Wife was previously listed on the deed. He also testified the parties discussed sharing the equity or value in the home during their pro se divorce discussions:

| Q: | And when you guys separated you did have conversations about what would happen with the home, right? |

---

was also relying on Rule 60(a) as grounds for a clerical mistake, Husband argued such reliance was inappropriate.

4

| | |
|---|---|
| Husband: | We did, yes. |
| Q: | And those included that it would be fair that you guys got half, right, half the value of the home? |
| Husband: | When we were going through the pro se divorce packet and were working on negotiations, that was what we had agreed to. |
| Q: | So at the time that was your intent, that she would get one half of the equity of the home and you would too? |
| Husband: | Those documents were never finalized. |
| Court: | No, not the documents, just her question which was about your intent at the time. |
| Husband: | That had been the intent at this point. |

After their conversations about sharing the value in the marital home, the parties did not further discuss the issue before signing the Stipulated Decree. Husband later testified he understood the language of Paragraph 17 to mean Wife was only entitled to a share of the equity if he sold the home.

[¶17] The district court entered its Corrected Order Granting Relief (Second Order Granting Relief) on March 15, 2024. It found the parties' "testimony supports that, during a period when the parties did not have counsel, both [Husband and Wife] understood and intended a half and half split of the equity in the home." The district court then found the surrounding circumstances, including the parties' familiarity with the refinancing process and mutual understanding about dividing other assets, reinforced the finding that the parties always intended an equal split of the home equity. Based on the evidence submitted by Husband and Wife, the district court concluded $212,646.80 represented the amount of equity in 1324 Bobcat Trail at the time of Husband's 2022 refinance.

[¶18] Relying on Rule 60, but without expressly identifying section (a) or (b), the District Court granted relief in favor of Wife, and ordered Husband to pay Wife $106,323.40, equal to half the equity in the home. Husband appealed.

## STANDARD OF REVIEW

[¶19] "[T]he central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent." *Spomer v. Spomer*, 580 P.2d 1146, 1149 (Wyo. 1978). We conduct a two-part review of a district court's application of W.R.C.P. 60(a). *Snyder v. Snyder*, 2021 WY 101, ¶ 13, 495 P.3d 876, 879 (Wyo. 2021). First, the court considers whether the requested correction or clarification relates to a "clerical mistake." *See id.; see also* W.R.C.P. 60(a). Second, the court determines whether the proposed correction or clarification modifies the original judgment. *See Snyder*, ¶ 13,

495 P.3d at 879. Both parts of the analysis raise questions of law, which we review de novo. *Id.; see also Stone v. Stone*, 2023 WY 21, ¶ 9, 525 P.3d 634, 637 (Wyo. 2023).

[¶20] The purpose of Rule 52(a) is "to indicate the factual basis for the decision on the contested matters." *O's Gold Seed Co. v. United Agri-Products Fin. Servs., Inc.*, 761 P.2d 673, 676 (Wyo. 1988). We defer to the district court's factual findings unless they are clearly erroneous. *Claman v. Popp*, 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012); *see also Castellow v. Pettengill*, 2021 WY 88, 492 P.3d 894 (Wyo. 2021). "Factual findings are clearly erroneous when, although there is evidence to support them, the reviewing court is left with the definite and firm conviction upon review of the entire record that the district court made a mistake." *Morrison v. Hinson-Morrison*, 2024 WY 96, ¶ 18, 555 P.3d 944, 953 (Wyo. 2024). "We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law." *Meiners v. Meiners*, 2019 WY 39, ¶ 8, 438 P.3d 1260, 1266 (Wyo. 2019).

## DISCUSSION

[¶21] The district court did not expressly state whether the Second Order Granting Relief was based upon Rule 60(a) or (b), although it explained "clarification or correction is necessary and appropriate," indicating its reliance was likely on the former. On appeal, Husband argues that under either section of Rule 60 the Second Order Granting Relief was improper and the district court erred as a matter of contract law in finding the parties agreed to divide the marital home. Specifically, Husband asserts that under Rule 60(a), the Second Order Granting Relief was not a clarification based upon a clerical mistake. Husband also argues that even if it was, the clarification impermissibly modified the Stipulated Decree. In addition, Husband argues the district court improperly relied upon the parties' subjective intent related to the Stipulated Decree and failed to construe the decree against the Wife, whose attorney drafted it. Finally, Husband challenges the sufficiency of the district court's findings under Rule 52(a)(1)(A) in light of his written request for findings.

> **I.      The district court did not err when it clarified the Stipulated Decree pursuant to W.R.C.P. 60(a).**
>
> > **A.      W.R.C.P. 60(a) permits the type of clarification of a clerical error made in the Second Order Granting Relief.**

[¶22] "Rule 60(a) is intended to correct clerical errors rather than mistakes made by the court (judicial errors)." *Meckem v. Carter*, 2014 WY 52, ¶ 12, 323 P.3d 637, 643 (Wyo. 2014) (citing *Elsasser v. Elsasser*, 989 P.2d 106, 108 (Wyo. 1999)). "A clerical error is a mistake or omission of a mechanical nature apparent on the face of the record that prevents

6

the judgment as entered from accurately reflecting the judgment that was rendered." *Id.* The rule is "designed to clarify, as well as to correct, and is properly invoked to dispel either patent or latent ambiguities in a judgment." *Id.*

[¶23] Husband contends the district court's clarification in the Second Order Granting Relief did not address a clerical mistake, and therefore, application of Rule 60(a) was inappropriate. We disagree. In *Van Vlack I*, we found Paragraph 17 was ambiguous as to whether Wife was entitled to half of the net proceeds from refinancing 1324 Bobcat Trail. *Van Vlack I*, ¶ 26, 537 P.3d at 759. Given the ambiguity, we acknowledged that "any mistake was not the deliberate result of judicial reasoning and determination." *Id.,* ¶ 32, 537 P.3d at 760. Rather, it was the product of the parties' own dealings, and a failure to unambiguously express their agreement as to distributing the marital home in Paragraph 17 of the Stipulated Decree. *Id.*, ¶¶ 25-26, 537 P.3d at 758; *see also Spomer*, 580 P.2d at 1149 (distinguishing clerical errors from a judicial error which "reflects a deliberate choice on the part of the court"). Although we did not state it directly in *Van Vlack I*, the ambiguity in Paragraph 17 of the Stipulated Decree was the type of clerical mistake contemplated by Rule 60(a). As a result, we directed the district court to hold additional proceedings to discern the parties' intent in the Stipulated Decree to correct or clarify the latent ambiguity, i.e., the mistake.

[¶24] The issue of whether the Stipulated Decree contained a clerical mistake has not changed since *Van Vlack I*. Paragraph 17 of the Stipulated Decree as originally written contained a clerical mistake—a latent ambiguity regarding the marital home. Clarifying an ambiguity of this nature falls within the scope of Rule 60(a) because the mistake prevents the judgment that was entered from reflecting the judgment that was rendered. *Stone*, ¶ 12, 525 P.3d at 637; *see also Tafoya v. Tafoya*, 2013 WY 121, ¶ 12, 309 P.3d 1236, 1239 (Wyo. 2013). In this case, the mistake prevented the Stipulated Decree from unambiguously reflecting what the parties agreed to regarding distribution of the marital home.

[¶25] In addition, this Court has previously held that courts retain the authority, pursuant to Rule 60(a), "to clarify an ambiguous property settlement provision provided in the original decree in order to effectuate the provision." *Wyland v. Wyland*, 2006 WY 93, ¶ 9, 138 P.3d 1165, 1168 (Wyo. 2006) (citing *Glover v. Crayk*, 2005 WY 143, ¶ 7, 122 P.3d 955, 957 (Wyo. 2005)). That is precisely what the district court did on remand in this case when it clarified Paragraph 17 of the Stipulated Decree to effectuate the parties' intent at the time they entered into the decree.

**B.     The Second Order Granting Relief did not impermissibly modify the Stipulated Decree.**

[¶26] Husband also argues the district court's Second Order Granting Relief was impermissible under Rule 60(a) because it modified the Stipulated Decree by inserting the term "equity" into the agreement. Again, we disagree.

[¶27] "W.R.C.P. 60(a) can only be used to make the judgment or record speak the truth and not to make it say something other than what was originally pronounced." *Snyder*, ¶ 16, 495 P.3d at 879-80 (internal quotation marks omitted). Therefore, any clarification that substantively alters the order violates the purpose of the rule. *Id.*; *see also Tafoya*, ¶ 21, 309 P.3d at 1241.

[¶28] We start by comparing the language of the Stipulated Decree to the district court's Second Order Granting Relief. *Glover*, ¶ 10, 122 P.3d at 958. The Stipulated Decree provides "[Wife] shall be entitled to one half (1/2) the net proceeds from the home and she shall receive her portion owing directly from the title company." As we identified in *Van Vlack I*, the "Stipulated Decree is ambiguous as to whether [Husband] was required to provide [Wife] half the net proceeds in the event of refinance." *Van Vlack I*, ¶ 26, 537 P.3d at 759 (alteration added). The district court found "[t]he testimony supports that, during a period when the parties did not have counsel, both of them understood and intended a half and half split of the equity in the home." Addressing the ambiguity in the Stipulated Decree, the district court then found:

> The notion that the parties only intended to split what a refinance or sale yielded in cash is a similarly flawed argument. Simply refinancing would put the entire "equity" in the [Husband's] hands by virtue of his having ownership of the asset which was worth far more than his debt. Cash out or debt, he would still benefit disproportionately and that is not what the parties intended.

With this understanding of Paragraph 17, the district court concluded its clarification was necessary to effectuate the parties' original intent. It then awarded half of the equity after refinancing 1324 Bobcat Trail to Wife.

[¶29] Husband's argument overlooks the latent ambiguity this Court identified in *Van Vlack I* and the purpose of the remand. The Stipulated Decree did not define "net proceeds" or contain the word "equity." *Van Vlack I*, ¶ 23, 537 P.3d at 758. As a result, we recognized there are two possible ways to interpret Paragraph 17. *Id.*, ¶ 25, 537 P.3d at 758 ("Taken together, the provisions in paragraph 17 could mean that [Wife] is entitled to one half the net proceeds received from the refinance or sale of the home. They also could mean that [Wife] is only entitled to one half the net proceeds if the home is sold"). Rather than improperly inserting the term "equity" into the Stipulated Decree, the Second Order Granting Relief gave meaning to the two possible interpretations that we identified in *Van*

8

*Vlack I*, and then identified the correct one based upon the evidence presented at the hearing.

[¶30] Husband's related assertion that the district court's calculation and award of the equity modified the Stipulated Decree also fails. The Stipulated Decree unequivocally provided Wife "shall receive her portion owing directly from the title company." The Second Order Granting Relief addressed the mistake that denied Wife her share of the marital home. As the district court found, "[Husband] post-divorce, decided it was to his advantage to interpret the decree otherwise, depriving [Wife] of any interest in the home, their principal asset. He apparently convinced the title company representative of that same interpretation[.]" We cannot say the district court's calculation and award modified the Stipulated Decree. *See Wyland*, ¶ 12, 138 P.3d at 1169 (finding the district court's calculation of husband's military retirement benefits in clarifying order did not modify the divorce decree); *Stone*, ¶ 15 525 P.3d at 637-38 (affirming the district court's use of a formula to clarify the distribution of the husband's military benefits).

[¶31] The latent ambiguity in the Stipulated Decree and evidence of the parties' understanding to divide their assets confirms the corrective nature of the district court's order. The Stipulated Decree contained an ambiguity that prevented Wife from receiving the proceeds from 1324 Bobcat Trail as originally intended, and the Second Order Granting Relief clarified the Stipulated Decree rather than modifying it. We therefore conclude the Second Order Granting Relief was consistent with and appropriate under Rule 60(a). Having found the district court's Second Order Granting Relief met the requirements of Rule 60(a), we need not address the parties' arguments with respect to Rule 60(b). *See Kane v. Kane*, 706 P.2d 676, 679 (Wyo. 1985) (stating "it is well established that we can uphold a trial court if there is any proper basis on which that can be done.").

### C. The District Court did not err in considering the parties' negotiations or declining to construe the Stipulated Decree against Wife.

[¶32] Husband also raises two arguments regarding the evidentiary grounds for the Second Order Granting Relief. While we ordered the district court to explore the parties' original intent in forming the Stipulated Decree on remand, *Van Vlack I*, ¶ 34, 537 P.3d at 760, Husband argues the district court erred as a matter of contract law when it considered the parties' subjective intent to help resolve the ambiguity in Paragraph 17. Specifically, Husband asserts the district court should not have considered evidence of the parties' intent as expressed during negotiations prior to signing the Stipulated Decree.

[¶33] "Determination of the parties' intentions requires common sense and good faith; it also requires consideration of the context within which the contract was made." *Davison v. Wyo. Game & Fish Comm'n*, 2010 WY 121, ¶ 9, 238 P.3d 556, 560 (Wyo. 2010). To determine intent, we "consider the circumstances surrounding execution of an agreement"

9

such as the "parties' relationship, the subject matter of the contract, and the parties' apparent purpose in making the contract . . . ." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 43, 226 P.3d 889, 909 (Wyo. 2010) (citing *Mullinnix, LLC v. HKB Royalty Trust*, 2006 WY 14, ¶ 6, 126 P.3d 909, 915 (Wyo. 2006)).  As a general rule, "a party's subjective intent is not relevant in contract interpretation cases[.]" *Omohundro v. Sullivan*, 2009 WY 38, ¶ 24, 202 P.3d 1077, 1084 (Wyo. 2009).

[¶34]  This Court was presented with a similar scenario in the *Comet Energy* cases.  In *Comet Energy I*, we found an ambiguity in an oil and gas assignment and remanded the matter to the district court.  *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 14, 185 P.3d 1259, 1264 (Wyo. 2008) ("*Comet Energy I*").  The district court then received evidence from the parties about the agreement and discerned the parties' intent regarding the ambiguous assignment.  *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures*, LLC, 2010 WY 82, ¶ 8, 239 P.3d 382, 385-86 (Wyo. 2010) ("*Comet Energy II*").  In the second appeal, Comet Energy argued the district court improperly considered inadmissible evidence of the subjective intent of the parties when the assignment was executed.  *Id.*, ¶ 12, 239 P.3d at 386.

[¶35]  In *Comet II*, this Court reiterated that "we use an objective approach to contract interpretation."  *Id.,* ¶ 14, 239 P.3d at 387 (citing *Omohundro*, ¶ 24, 202 P.3d at 1084).  After reviewing the complete record, which placed the parties' statements in context, we determined the challenged testimony "was the sort of evidence this Court contemplated when we remanded the case for resolution" of the ambiguous meaning.  *Id.*, ¶ 23, 239 P.3d at 390.  Even though certain statements of subjective intent might have been inadmissible if viewed in isolation, the testimony considered in its entirety was admissible evidence of the objective circumstances surrounding the ambiguity.  *See id.,* ¶ 24, 239 P.3d at 390.

[¶36]  We see no reason to deviate from our rationale in *Comet Energy II* because, as we did there, we instructed the district court in this case to consider evidence of the parties' original intent at the time of their agreement.[2]  *Van Vlack I*, ¶¶ 33-34, 537 P.3d at 760; *Interest of JN v. State*, 2024 WY 105, ¶ 19, 556 P.3d 748, 753 (Wyo. 2024) ("As a matter of law, when we remand a case, a lower court must substantially comply with the combined directions, purpose, and intent of our opinion and mandate.") (internal quotations and alteration omitted).  And, just as in *Comet Energy II*, the record in this case reflects the district court was considering the parties' statements as a component of the surrounding circumstances.

---

[2] We are aware that deviating from our reasoning in *Comet Energy II* creates opportunities for appellants to strike unfavorable testimony regarding an ambiguity in a contract even if this Court directed the district court to collect such evidence on remand.  Our finding in this case does not seek to upset the rule articulated in *Omohundro*; it merely considers the limited circumstance recognized in *Comet Energy II* in matters where this Court remanded the case for further proceedings to resolve ambiguities in a contract, assuming the record allows district courts to complete their objective approach to contract interpretation.

[¶37]   Importantly, the district court did not simply base its decision on a statement of subjective intent by either party.  Rather, as the district court explained, it considered the "surrounding circumstances," including the parties' knowledge of the refinance process, their mutual understanding about equalization payments and other matters, and the course of negotiations between the parties when they were unrepresented.  Additional testimony from the record bears out why these surrounding circumstances support the district court's determination, including about the parties' purchase of the residence, payments on the mortgage from a joint account, and collective efforts to secure appraisals after their separation but prior to their divorce.  Finally, Husband testified he and Wife discussed that it would be "fair" if each got half the value of the home.

[¶38]   When viewed in its entire context, we are not persuaded any of Husband's or Wife's testimony about the ambiguous provision constituted irrelevant, inadmissible evidence of the parties' subjective intent.  Therefore, the district court did not err when it considered the parties' negotiations.  *See Comet Energy II*, ¶ 24, 239 P.3d at 390 (rejecting argument that declarant testimony was impermissible evidence of subjective intent).

[¶39]   Husband also argues the district court erred when it did not construe the ambiguous language against Wife because Wife's counsel drafted the Stipulated Decree.  Instead, the district court considered the circumstances surrounding the parties' negotiations and their testimony about the division of the equity in the home.

[¶40]   We recognize "any ambiguity in [a] contract is construed against the drafter of the agreement."  *Collins v. Finnell*, 2001 WY 74, ¶ 19, 29 P.3d 93, 101 (Wyo. 2001).  Also known as the *contra proferentem* doctrine, "courts will not permit parties to strain construction to bring the contract within that rule."  *Action Ads, Inc. v. Judes*, 671 P.2d 309, 314 (Wyo. 1983); *see also* 11 *Williston on Contracts* § 32:12 (4th ed. May 2024 update) ("The rule of *contra proferentem* is generally said to be a rule of last resort and is applied only when other secondary rules of interpretation have failed to elucidate the contract's meaning.").  Because we consider the surrounding circumstances and purpose for an agreement to ascertain the intent of ambiguous language, "[t]he identity of the party drafting the contract is one of those surrounding circumstances **we may consider**."  *P&N Investments, LLC v. Frontier Mall Assocs., LP*, 2017 WY 62, ¶ 19, 395 P.3d 1101, 1106, n.3 (Wyo. 2017) (emphasis added).

[¶41]   Husband contends the district court was required to interpret the ambiguity in the Stipulated Decree in his favor as a matter of contract law.  We recognized in *Tafoya* a divorce decree "is an order of the Court and by the Court."  *Tafoya*, ¶ 22, 309 P.3d at 1241.  There, the mother sought to apply the rule against the father in a divorce decree because the father's attorney drafted the agreement.  *Id.*  We declined to apply the rule to the divorce decree because there was "no pertinent legal authority or any basis in law for the proposition that ambiguous court orders be resolved against a party whose lawyer may

11

have drafted the order for the district court's consideration and use." *Id.* Husband does not offer a sound reason for this Court to upend our ruling in *Tafoya*.

[¶42] Instead, Husband relies on his testimony in which he later claimed it was his understanding that Wife was only entitled to the proceeds if he was forced to sell 1324 Bobcat Trail. He then argues we must construe the Stipulated Decree against Wife and adopt his interpretation because "there is no prior written property settlement between the parties." We reject Husband's argument for two reasons.

[¶43] First, the district court considered the circumstances surrounding the parties' dealings to ascertain their intent and found a half and half split of the equity was always intended. Husband's invitation to construe the Stipulated Decree in his favor requires us to ignore objective evidence supporting an equal distribution of the marital home and unnecessarily strains the Stipulated Decree to align with the rule. *See Action Ads, Inc.*, 671 P.2d at 314; *see also Wangler v. Federer*, 714 P.2d 1209, 1213 (Wyo. 1986) (stating when construing an ambiguous contract "[t]he words and acts of the parties must be given effect[.]"). Applying Husband's preferred rule of construction in this case also threatens to violate public policy by creating an unjustifiable windfall for Husband. *See David v. David*, 724 P.2d 1141, 1143 (Wyo. 1986) (explaining "parties cannot oust a court's statutory duty to make such disposition of the property of the parties as appears just and equitable") (internal quotation and citation omitted); *see also* Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2023) (stating "in granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable[.]"). The district court identified the same flaw with Husband's argument.

[¶44] Second, our reasoning in *Tafoya* controls and, considering the objective evidence of the parties' intent in the record, we find it "improper and imprudent" to interpret the Stipulated Decree against the non-drafting party. *Tafoya*, ¶ 22, 309 P.3d at 1241. Therefore, the district court did not err in applying the law of contract construction.

## II. The *Second Order Granting Relief* contains sufficiently articulated findings of fact and conclusions of law.

[¶45] Husband filed a request for written findings and conclusions of law under W.R.C.P. 52(a)(1)(A). He now challenges the sufficiency of the district court's findings and conclusions in the Second Order Granting Relief. Husband argues the Second Order Granting Relief did not cite the record and erroneously found the parties reached an agreement before executing the Stipulated Decree.

[¶46] Wyoming Rule of Civil Procedure 52(a)(1)(A) provides:

> (A) Requests for Written Findings. — If one of the parties requests it before the introduction of any evidence, with

12

the view of excepting to the decision of the court upon the questions of law involved in the trial, the court shall state in writing its special findings of fact separately from its conclusions of law[.]

"The purpose of Rule 52(a) is 'to indicate the factual basis for the decision on the contested matters.'" *Castellow*, ¶ 10, 492 P.3d at 898 (quoting *O's Gold Seed Co.*, 761 P.2d at 676).

[¶47] To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision. *Id.* (quoting *Kimzey v. Kimzey*, 2020 WY 52, ¶ 38, 461 P.3d 1229, 1241 n.2 (Wyo. 2020)). The court's findings "do not need to be elaborate." *Id.* However, they do need to "be clear, specific and complete in concise language informing the appellate court of the underlying bases for the trial court's decision." *Id.* (quoting *O's Gold*, 761 P.2d at 676).

[¶48] Here, the relevant district court factual findings are:

(1) The testimony supports that, during a period when the parties did not have counsel, both of them understood and intended a half and half split of the equity in the home.

(2) No further discussion of that particular provision or its meaning was apparently undertaken and paragraph 17a.ii indisputably became the property division order of a Stipulated Decree.

(3) The surrounding circumstances support a finding that a half and half split of that equity was always intended. Including their familiarity with the refinance process from 6 months prior in the fall of 2021. They discussed, prior to being represented, the very meaning [Wife] argues here. Their mutual understanding about other matters, vehicles, equalization payments etc. were all confirmed in the final Order and are consistent with [Wife's] testimony.

(4) The [Husband], post-divorce, decided it was to his advantage to interpret the decree otherwise, depriving [Wife] of any interest in the home, their principal asset. He apparently convinced a title company representative of that same interpretation resulting in this litigation.

13

(5) Grounds exist for clarification under Rule 60 and equity demands it. The most generous interpretation of the Decree and this evidence would be a misunderstanding of huge proportions. Worse, it has characteristics of deception.

\*\*\*

(8) The evidence of the value of the house is that it was worth $528,500 as appraised by Mr. Kopsa in April 2022, and that amount was relied on in support of Plaintiffs refinance. It was close in time to the divorce discussions and only a few months before the divorce was finalized.

(9) The debt from the Mortgage and a Heloc, (and including closing costs of the refinance) totaled $315,853.92. This means that $212,646.80 represents the total equity that should have been distributed, either through sale, or upon a refinance where cash could be taken out. [Wife's] half of that amount is $106,323.40.

(10) [Husband] chose to refinance instead of selling, and because he had changed his interpretation of the decree to his advantage, did not take out enough extra to pay [Wife] her share.

[¶49] Husband contends the district court's order was inadequate because it did not specifically cite testimony, exhibits, or the record. While district courts are wise to cite relevant portions of the record when a party files a request for specific findings of fact and conclusions law, the purpose of Rule 52(a) "is to inform the appellate court of the underlying facts supporting the trial court's conclusions of law and disposition of the issues." *Fuger v. Wagoner*, 2024 WY 73, ¶ 25, 551 P.3d 1085, 1093 n.2 (Wyo. 2024) (citation omitted).

[¶50] The Second Order Granting Relief contains sufficient Rule 52 findings to review the district court's decision. The district court discussed the circumstances supporting its finding that the parties intended to share the value in 1324 Bobcat Trail including their familiarity with the refinance process, discussions leading up to the Stipulated Decree, and a mutual understanding about dividing their other assets. These findings do not preclude or hinder our ability to review the district court's Second Order Granting Relief.

[¶51] Next, we consider whether the district court's findings are adequately supported by the record. *See Cross v. Berg Lumber Co.*, 7 P.3d 922, 928 (Wyo. 2000) (stating "[w]hile the [district court's] findings are presumptively correct, the appellate court may examine

14

all of the properly admissible evidence in the record.") (citation omitted). We find that they are. The testimony from the evidentiary hearing on remand was that throughout their marriage, Husband and Wife made the residence their marital home and both contributed to a joint account which supported their mortgage payments. The parties' testimony also reflected a mutual understanding of the refinance process and Husband and Wife's various efforts to secure an appraisal in preparation for their separation. In the end, both parties confirmed they engaged in pro se conversations prior to executing the Stipulated Decree and understood that they intended to share the home's value.

[¶52] The record also establishes that after Husband reviewed the Stipulated Decree he formed a new understanding of Paragraph 17—Wife would only receive the proceeds from the home if he failed to refinance and was forced to sell the home. The district court did not find Husband's testimony credible and concluded that his subsequent interpretation "has characteristics of deception." This Court does not disturb the district court's findings concerning the credibility of witnesses and we recognize "conflicts in the evidence must be resolved by the finder of fact." *McAdam v. McAdam*, 2014 WY 123, ¶ 26, 335 P.3d 466, 472 (Wyo. 2014) (citing *Olsen v. Olsen*, 2013 WY 115, ¶ 32, 310 P.3d 888, 895 (Wyo. 2013)). The district court's analysis demonstrates it weighed countervailing evidence and articulated a concise reason for arriving at its Second Order Granting Relief.

[¶53] Our determination of whether a district court's Rule 52(a) findings are sufficient depends on the facts and circumstances of the case. *Pettengill v. Castellow*, 2022 WY 144, ¶ 12 520 P.3d 105, 110 (Wyo. 2022). We remanded this case to the district court for the limited purpose of discerning the parties' intentions behind the ambiguity in the Stipulated Decree. *Van Vlack I*, ¶ 26, 537 P.3d at 759. Upon review of the record, we conclude the district court did not abuse its discretion because it provided a clear factual basis for its decision and those findings are consistent with the record.

[¶54] Husband also argues the District Court did not provide the necessary findings to support a legal or factual conclusion that the parties reached an oral contract prior to signing the Stipulated Agreement. Whether Husband and Wife came to an oral contract is beside the point. The Second Order Granting Relief makes no reference to an "oral contract." Nor was it necessary for the district court to find whether an oral contract existed. *See Van Vlack I*, ¶ 34, 537 P.3d at 760 (remanding "to determine the parties' original intent"). Wife is correct that Husband's position about the formation of an oral contract, or lack thereof, unnecessarily confuses the issue before this Court.

[¶55] Finally, Husband asserts the district court failed to expressly distinguish which subpart of Rule 60 it relied upon and failed to provide sufficient legal analysis under either subpart. As we explained above, the language used by the district court indicated it was relying on Rule 60(a). *See also Spomer*, 580 P.2d at 1148-50 (affirming district court's order under Rule 60(a) where the district court stated it "was attempting to correct an oversight" in its original divorce decree). As a result, and while it is abrupt, the district

15

court's reference to Rule 60 was sufficient to explain to us and the parties why it decided as it did. Nothing more was required.

[¶56] The Second Order Granting Relief contains sufficient findings for this Court to review the basis for the district court's conclusions. The district court's factual findings are also supported by the record. We did not find any instance where the district court rendered a conclusion that was unsupported by the record. *See Kennedy v. Kennedy*, 761 P.2d 995, 998 (Wyo. 1988) (recognizing "[a] finding rendered without sufficient evidence, however, is erroneous and constitutes an abuse of discretion[.]"). In addition, we find the district court sufficiently stated its conclusions of law. Accordingly, we find that the Second Order Granting Relief satisfies Rule 52(a).

## *CONCLUSION*

[¶57] The District Court's Second Order Granting Relief addressed a clerical mistake and did not impermissibly modify the original judgment. Its Second Order Granting Relief also contained sufficient findings of fact and conclusions of law to support its conclusion.

[¶58] Affirmed