# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 2

OCTOBER TERM, A.D. 2025

January 6, 2026

H. KENNETH JOHNSTON II,

Appellant
(Petitioner),

v.

TODD ERNST, in his official capacity as
the LARAMIE COUNTY ASSESSOR,

Appellee
(Respondent).

S-25-0137

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
    H. Kenneth Johnston II, pro se.

*Representing Appellees:*
    Mark T. Voss, Laramie County Attorney's Office, Cheyenne, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Chief Justice.**

[¶1]   H. Kenneth Johnston II challenged the Laramie County Assessor's valuation of his residential property. The Laramie County Board of Equalization (County Board) concluded Mr. Johnston had failed to show that the Assessor's valuation was incorrect or completed in an unlawful manner and affirmed the valuation. The State Board of Equalization and district court affirmed, and we likewise affirm.

## *ISSUES*

[¶2]   Mr. Johnston presents five issues on appeal, which we consolidate and restate as the following two issues:

> 1. Did the County Board abuse its discretion in admitting exhibits that the Assessor did not timely provide to Mr. Johnston?
>
> 2. Did the County Board err in concluding that Mr. Johnston did not meet his burden of showing that the Assessor's valuation of his property was incorrect or not in accordance with law?

## *FACTS*

[¶3]   In March 2023, Mr. Johnston received a tax assessment from the Laramie County Assessor that placed a value on his residential property of $732,661. He requested a review of the assessment and in April 2023 met with the Assessor. He informed the Assessor that he had purchased the home for $365,000 in 2013 and he felt that should be the assessed value of his home. Following the meeting, the Assessor's office determined that no change would be made to the assessment because Mr. Johnston had provided no information that its assessment was inaccurate, and it sent a letter to Mr. Johnston notifying him of that decision.

[¶4]   Mr. Johnston thereafter appealed the assessment to the County Board. While that appeal was pending, the Assessor took a closer look at the property to see if any adjustments could be made to bring the assessed value down. The Assessor explained:

> … As you all know, at this time, when somebody appeals their property, we take a little closer look, because, again, we are a mass appraisal state, so we're doing masses.
>
> When somebody comes in and disagrees with the value, that's when we take a closer look and see if there are

1

some inconsistencies that happen that we can make some adjustments to.

[¶5]    The Assessor considered Mr. Johnston's neighborhood and the quality of the homes in that neighborhood. The Assessor had Mr. Johnston's home rated as a "good plus" home, but based on his review, he determined it could be lowered to a rating of "good." This reduced the assessed value of the property from $732,661 to $671,465, and the Assessor issued an amended assessment reflecting that value.

[¶6]    When the Assessor amended the assessment to account for the lower quality rating, he neglected to adjust for the type of siding on Mr. Johnston's home. When he adjusted to account for the hardboard siding on the home, it increased the assessed value by $3,000. The Assessor thus sent out a second amended assessment increasing the value from $671,465 to $674,465.

[¶7]    On June 26, 2023, the County Board held a hearing on Mr. Johnston's appeal. At the outset of the hearing, Mr. Johnston objected to the Assessor's evidence arguing that by statute the parties were required to disclose witnesses and exchange evidence no later than thirty days before the hearing, and Mr. Johnston did not receive the Assessor's evidence until May 30, 2023. The Board overruled the objection and allowed both parties to present evidence.

[¶8]    Mr. Johnston offered a single exhibit, which the County Board admitted without objection. Page one of the exhibit was a document the Assessor had provided to Mr. Johnston, which consisted of a list of homes that had sold in Mr. Johnston's designated neighborhood in 2022, and the amounts for which they sold. Those sales were among the data the Assessor used to make a market adjustment to the valuation of Mr. Johnston's home. The amounts those homes sold for ranged from $430,000 to $871,000, and the Assessor excluded any outliers from the valuation.

[¶9]    The remainder of Mr. Johnston's exhibit was a market evaluation report that a realtor prepared for him. That report estimated the value of Mr. Johnston's property to be between $613,100 and $616,100. Mr. Johnston asked that the assessed value of his home be adjusted to reflect the realtor's evaluation.

[¶10] The Assessor testified to his thirty years of experience in the Laramie County Assessor's office, working first as a field appraiser and then as a field appraiser supervisor and chief deputy assessor before his present position. He further testified that he is certified as a Wyoming property tax appraiser, has over a thousand hours of courses through the State of Wyoming, and maintains his certification with 28 hours of continuing education every other year.

2

[¶11] The Assessor also testified as to his method for valuing residential property generally. He explained that every January, his office starts with a zero value for each residential property and enters data concerning building costs, including labor and materials, into the State's Computer Assisted Mass Appraisal (CAMA) system to establish for each property the replacement cost new of the property, less depreciation. That value is then adjusted based on a ratio calculated using sales within the property's neighborhood. The Assessor testified that the replacement cost data in the CAMA system is drawn from Marshall & Swift, a national costing manual, and the CAMA system is provided by the State and used statewide.

[¶12] The Assessor then explained his exhibits, which detailed how the CAMA system was used to value Mr. Johnston's property. The exhibits included sketches of the property and a property profile derived from data that field appraisers entered into the CAMA system after inspecting the property. It also included information concerning the sales of other properties in Mr. Johnston's designated neighborhood. The Assessor testified as to how his office used the CAMA system to calculate the cost per square foot to build new and then adjusted that cost using local and other multipliers drawn from the Marshall & Swift Residential Costing Manual. He further testified to adjustments made to the valuation based on property sales in Mr. Johnston's designated neighborhood.

[¶13] These calculations resulted in the original assessment Mr. Johnston received in March 2023. The Assessor testified that after Mr. Johnston filed his appeal, he took a closer look at the property to see if any further adjustments could be made. At that point, he determined that the property could be rated as "good" rather than "good plus," which brought the value down. The "good" and "good plus" ratings are drawn from Marshall & Swift and the determination of which rating applies is based on Marshall & Swift guidance as well as the training and experience of the Assessor and his field appraisers. The Assessor testified that the change in the rating of the property from "good" to "good plus" ultimately led to the amended assessment and the second amended assessment.

[¶14] The County Board affirmed the Assessor's second amended assessment of Mr. Johnston's property. It found the Appraiser had calculated the $674,249 value for Mr. Johnston's property using the CAMA system, with information gathered by the Assessor's office, including the characteristics of the property and sales information as appropriate, and had adjusted the value using his "experience and expertise to determine that a different quality would be appropriate for the subject property." It concluded:

> The record is void of any credible evidence which supports [Mr. Johnston's] position that the property value should be anything other than that calculated by the Assessor. There was no evidence presented by [Mr. Johnston] demonstrating the Assessor had incorrectly utilized the CAMA System, a property appraisal method approved by the

Department of Revenue. Further, [Mr. Johnston] demonstrated no error or inaccuracy in the Assessor's use of the CAMA System.

[¶15] Mr. Johnston appealed the County Board's ruling to the State Board of Equalization. Because Mr. Johnston had appealed the original assessment and not the amended assessments, the State Board reversed and remanded to the County Board for a determination of whether good cause excused Mr. Johnston's failure to appeal the amended assessments. On remand, the County Board found good cause and gave Mr. Johnston thirty days to file an appeal from the second amended assessment. It ordered that should Mr. Johnston do so, the record from the previous hearing would be considered the complete evidentiary record and the County Board's previously entered order would be considered the order addressing that appeal.

[¶16] Mr. Johnston timely appealed the second amended assessment and again timely appealed the County Board's ruling to the State Board of Equalization. The State Board affirmed, as did the district court. Mr. Johnston timely appealed to this Court.

### STANDARD OF REVIEW

[¶17] When an appeal is taken from a county board of equalization decision, "[o]ur review is focused on the County Board's decisions, and we do not defer to the decision of the State Board of Equalization or to that of the district court." *Contango Res., LLC v. Fremont Cnty.*, 2025 WY 29, ¶ 23, 565 P.3d 167, 173 (Wyo. 2025) (quoting *State v. Uinta Cnty. Assessor*, 2024 WY 106, ¶ 9, 557 P.3d 298, 301 (Wyo. 2024)). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (2025), and we therefore:

> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be
>
> > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]
> >
> > * * *
> >
> > (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c).

4

[¶18] "The primary focus of our review is whether the County Board's decision was lawful and supported by substantial evidence." *Contango*, 2025 WY 29, ¶ 24, 565 P.3d at 173–74 (quoting *Uinta Cnty. Assessor*, 2024 WY 106, ¶ 10, 557 P.3d at 301). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support' the decision." *Contango*, 2025 WY 29, ¶ 24, 565 P.3d at 174 "A finding of fact is 'supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for it.'" *Contango*, 2025 WY 29, ¶ 24, 565 P.3d at 174 (quoting *Gray v. Converse Cnty. Assessor*, 2023 WY 116, ¶ 7, 539 P.3d 107, 111 (Wyo. 2023)).

[¶19] We review the County Board's conclusions of law de novo. *Contango*, 2025 WY 29, ¶ 24, 565 P.3d at 174 (citing *Gray*, 2023 WY 116, ¶ 7, 539 P.3d at 110). "The mechanisms used to control discovery and the selection of appropriate sanctions are reviewed for an abuse of discretion." *Wearmouth v. Four Thirteen, LLC*, 2024 WY 116, ¶ 20, 558 P.3d 935, 942 (Wyo. 2024) (citing *Groskop v. S&T Bank*, 2020 WY 113, ¶ 26, 471 P.3d 274, 282 (Wyo. 2020)); *see also Airtouch Commc'ns, Inc. v. Dep't of Rev.*, 2003 WY 114, ¶ 55, 76 P.3d 342, 361 (Wyo. 2003) ("[A]dministrative agencies have broad discretion with regard to evidentiary matters in contested case proceedings.") (citing *Clark v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 968 P.2d 436, 439 (Wyo. 1998)).

## DISCUSSION

### I. *The County Board did not abuse its discretion in admitting the Assessor's evidence.*

[¶20] Wyo. Stat. Ann. § 39-13-109(b)(i) (2025) provides that in the event of an appeal of an assessment, "[t]he county assessor and the person contesting the assessment, or his agent, shall disclose witnesses and exchange information, evidence and documents relevant to the appeal … no later than thirty (30) days prior to the scheduled county board of equalization hearing." The statute does not specify any consequences for nondisclosure or untimely disclosure.

[¶21] Subsection 109(b)(i) also provides that "[a]ll hearings shall be conducted in accordance with the rules adopted by the state board of equalization." Those rules direct that:

> (a) At least 30 days before the scheduled hearing, the petitioner and assessor, or their respective attorney or agent, shall disclose witnesses and exchange information, evidence, and documents relevant to the appeal[.]

> (b) Failure to disclose witnesses or to exchange information, evidence or documents may result in exclusion of the undisclosed testimony, evidence or documents at the hearing at the discretion of the county board or hearing officer.

Rules, Wyo. State Bd. of Equalization, ch. 7, § 8 (2021).

[¶22] Mr. Johnston argues that the purpose of the rule requiring disclosure thirty days in advance of the hearing "is to provide each party with the opportunity to review the other party's evidence in sufficient detail and time prior to the hearing." The record is clear, and there is no dispute that the Assessor mailed his disclosure thirty days before the hearing, and Mr. Johnston received the Assessor's exhibits twenty-seven days ahead of the hearing. Mr. Johnston did not argue before the Board, and he does not argue on appeal, that he lacked sufficient time to consider the materials, and he asserts no other prejudice from the delay in receipt.

[¶23] As the party challenging the County Board's admission of the Assessor's evidence, Mr. Johnston "bears the burden of showing an abuse of discretion." *Hutton v. Dykes*, 2025 WY 94, ¶ 16, 575 P.3d 334, 341 (Wyo. 2025) (quoting *Davidson-Eaton v. Iversen*, 2022 WY 135, ¶ 31, 519 P.3d 626, 637 (Wyo. 2022)). We will not find an abuse of discretion unless the Board's decision "exceed[ed] the bounds of reason under the circumstances." *Hutton*, 2025 WY 94, ¶ 16, 575 P.3d at 341. ("A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances."). Here, where the disclosure was only three days late and Mr. Johnston claimed no prejudice resulting from that delay, we cannot find that the Board's decision exceeded the bounds of reason under the circumstances. We therefore find no abuse of discretion in the Board's admission of the Assessor's evidence.[1]

## II.    *The County Board's decision affirming the assessed value of Mr. Johnston's home was supported by substantial evidence and in accordance with law.*

[¶24] The Wyoming Constitution requires that all property be equally and uniformly valued for tax purposes. Wyo. Const. Art. 15, sec. 11(a), (d). "To accomplish that directive an assessor must adopt a rational method of appraisal, equally applied to all property, which results in essential fairness." *Contango*, 2025 WY 29, ¶ 25, 565 P.3d at 174 (quoting *Thunder Basin Coal Co. v. Campbell Cnty.*, 2006 WY 44, ¶ 18, 132 P.3d 801, 807 (Wyo. 2006)). To that end, the legislature has directed that all taxable property

---

[1] The Assessor contends disclosure of his evidence was timely under W.R.C.P. 5(b)(2)(E) upon placing it in the mail on May 26, 2023. Because we have found no abuse of discretion in the County Board's decision to admit the evidence, we need not address this question.

must be valued at its fair market value for property tax purposes, and it has tasked the Department of Revenue with "prescrib[ing] by rule and regulation the appraisal methods and systems for determining fair market value using generally accepted appraisal standards[.]" Wyo. Stat. Ann. § 39-13-103(b)(ii) (2025).

[¶25]  The Department of Revenue has adopted such rules for assessments of property by county assessors. *See* Rules, Wyo. Dep't of Revenue, Ch. 9 (2016). Those rules mandate use of the CAMA system to assess the value of "all real and personal property, except property for which narrative appraisals or other recognized supplemental appraisals are used as a substitute to the CAMA system." *Id.*, Ch. 9, § 7.

[¶26]  The Assessor testified in detail concerning his office's use of the CAMA system to value Mr. Jonhston's property and the specific information that was entered into the system to determine the property's taxable value. A "strong presumption" favors that valuation. *Contango*, 2025 WY 29, ¶ 27, 565 P.3d at 174 (quoting *Mountain Vista Ret. Residence v. Fremont Cnty. Assessor*, 2015 WY 117, ¶ 12, 356 P.3d 269, 273 (Wyo. 2015)). "Absent evidence to the contrary, 'we presume that the officials charged with establishing value exercised honest judgment in accordance with the applicable rules, regulations, and other directives that have passed public scrutiny, either through legislative enactment or agency rule-making, or both.'" *Contango*, 2025 WY 29, ¶ 27, 565 P.3d at 174 (quoting *Helmut J. Mueller Ltd. P'ship v. Treanor*, 2018 WY 131, ¶ 13, 430 P.3d 733, 737 (Wyo. 2018)).

[¶27]  "The presumption in favor of an assessor's valuation sets up shifting burdens." *Contango*, 2025 WY 29, ¶ 28, 565 P.3d at 174. Mr. Johnston had the initial burden of presenting credible evidence to overcome the presumption. *Id.* (citing *Helmut J. Mueller*, 2018 WY 131, ¶ 13, 430 P.3d at 737). If Mr. Johnston had met that burden, the burden would have shifted to the Assessor to defend the valuation. *Contango*, 2025 WY 29, ¶ 28, 565 P.3d at 174. Mr. Johnston would have then "had the ultimate burden of persuasion to prove, by a preponderance of the evidence, that the Assessor's valuations were not derived in accordance with the required constitutional and statutory requirements for valuing property." *Id.*, ¶ 28, 565 P.3d at 174–75 (quoting *Helmut J. Mueller*, 2018 WY 131, ¶ 13, 430 P.3d at 737).

[¶28]  Mr. Johnston does not claim that the Assessor entered inaccurate information concerning his property into the CAMA system, or that the Assessor misused the CAMA system. He instead contends that actual sales of properties in his neighborhood should have been deemed the fair market value assessment of his property. We have held that such an approach to valuation would likely run afoul of our constitution's mandates.

> It is clear from the Constitution of the State of Wyoming and all of the relevant statutes that discrimination in a class is prohibited. Property must be uniformly valued and equally

and uniformly taxed. The rules and regulations promulgated by the State Board, pursuant to statutory authority, authorize several methods of appraisal which may be used by the assessor to provide uniformity. Reliance upon actual sales prices, in lieu of the methods adopted by the State Board, may well lead to discrimination and lack of equality and uniformity.

*Gray v. Wyo. State Bd. of Equalization*, 896 P.2d 1347, 1351 (Wyo. 1995).

[¶29] The Assessor testified that the CAMA system is used statewide, rather than individual purchase prices, to ensure fair and equal treatment across all neighborhoods. While the price of homes in a given neighborhood is a factor considered by the CAMA system to establish taxable value, Mr. Johnston points to no authority in our tax statutes or the Department of Revenue's rules that requires, or even allows, it to be the sole factor for establishing fair market value. We therefore reject his argument.

[¶30] Mr. Johnston next contends that the Assessor's refusal to adjust his valuation following their meeting, coupled with the adjustment after he filed his appeal, showed that the Assessor's valuation using the CAMA system should not be presumed valid. We disagree.

[¶31] The Assessor testified that his office did not change the valuation following the meeting with Mr. Johnston because the only information Mr. Johnston provided in that meeting was that he had purchased his home for $365,000 in 2013 and felt that should be the assessed value of his home. Once Mr. Johnston filed an appeal, the Assessor conducted an individualized review of the property to determine whether any adjustment could be made, and he testified to the basis for making the adjustment and how it comported with the requirements of the CAMA system. Mr. Johnston has pointed to no procedural bar to the Assessor conducting an individualized review upon the filing of an appeal or to any error in the Assessor's adjustment, and he has therefore not overcome the presumption in favor of the Assessor's valuation.

[¶32] Mr. Johnston last asserts that this Court held in *Gray*, 896 P.2d at 1349, that there were eight appropriate methods to determine fair market value, and he contends it was therefore inappropriate for the Assessor to rely solely on the CAMA system. In *Gray*, we cited a Department of Revenue rule that outlined the various approaches to determining fair market value, depending on the type of property being valued and whether it fit any assumption inherent in a particular appraisal method. 896 P.2d at 1349. We also noted, however, that it is not the duty of this Court to determine which appraisal method is the best approach to estimate fair market value. *Id*. at 1351. We recently reiterated this and explained:

> In reviewing a valuation method, the task of the appellate court is not to determine which of various appraisal methods is best or most accurately estimates fair market value. The reviewing court only determines whether substantial evidence exists to support use of the chosen method.

*Contango*, 2025 WY 29, ¶ 40, 565 P.3d at 177 (quoting *Britt v. Fremont Cnty. Assessor*, 2006 WY 10, ¶ 17, 126 P.3d 117, 123 (Wyo. 2006)).

[¶33] Mr. Johnston has offered no evidence to show that the Assessor's reliance on the CAMA system to value his property was in error. Nor has he claimed that substantial evidence did not support the Assessor's use of the system. We therefore reject his argument that the Assessor erred in relying on the CAMA system to value the property.[2]

[¶34] Affirmed.

---

[2] In Mr. Johnston's statement of the issues, he suggests that a valuation premised on anything other than "actual sale values" is contrary "to the Constitutional right, power, and privilege." In the argument section of his brief, he offers no authority or cogent argument to support this claim, and we therefore do not consider it. *See McInerney v. Kramer*, 2023 WY 108, ¶ 9, 537 P.3d 1146, 1148 (Wyo. 2023) (noting the leniency shown pro se litigants but observing "[w]hen a brief contains no cogent argument or pertinent authority, we consistently have refused to consider the appeal, whether the brief is by a litigant pro se or is filed by counsel").