# IN THE SUPREME COURT, STATE OF WYOMING

# 2026 WY 50

APRIL TERM, A.D. 2026

April 30, 2026

DINO MONCECCHI,

Appellant
(Petitioner),

v.

S-25-0270

MCKELLAR, TIEDEKEN &
SCOGGIN, LLC,

Appellee
(Respondent).

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

*Representing Appellant:*
    Dino Gabriel Moncecchi, pro se.

*Representing Appellees:*
    Sean W. Scoggin, McKellar, Tiedeken & Scoggin, LLC, Cheyenne, Wyoming.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Chief Justice.**

[¶1]    Dino Moncecchi appeals a Laramie County District Court order affirming a decision by the Wyoming Department of Workforce Services, Labor Standards Division (the Department), which denied his wage claim against his former employer, McKellar, Tiedeken & Scoggin, LLC (MTS). The Department's hearing examiner concluded Mr. Moncecchi failed to prove he was entitled to the claimed wages. We affirm.

## ISSUES

[¶2]    The parties present several issues on appeal, which we consolidate and restate as follows:

> 1. Did substantial evidence support the hearing examiner's finding that Mr. Moncecchi was entitled to no additional compensation for his work on the Orr case?
>
> 2. Did the hearing examiner's evidentiary rulings constitute an abuse of discretion?

## FACTS

[¶3]    MTS was a Cheyenne-based law firm that has since been administratively dissolved. During the period relevant to this dispute, MTS's principal partners were Brian Hunter, Julie Tiedeken, and Sean Scoggin.

[¶4]    In 2012, MTS contracted to represent Michael Orr in a personal injury matter on a contingency fee basis (the Orr case), with Mr. Scoggin acting as the lead attorney. Under the contingency fee agreement between MTS and Mr. Orr, Mr. Orr agreed to pay MTS one-third of net settlement proceeds. No MTS attorney billed Mr. Orr on an hourly basis for their work on the Orr case. The Orr case settled in 2017, and MTS recovered just over $40,000 (MTS's recovery).[1]

---

[1] The Orr case settled for $260,000, of which $86,666.67 was used to satisfy an outstanding workers' compensation lien under the settlement agreement. During settlement negotiations, Mr. Orr informed MTS he would not accept a settlement that provided him with less than $120,000 after expenses, liabilities, and attorney's fees. Therefore, to induce Mr. Orr to settle, MTS agreed to reduce its recovery to provide Mr. Orr with his desired $120,000. This left MTS with a total recovery of $40,555.26 after accounting for $12,778.07 in advanced costs.

[¶5]    Under a 2007 resolution between MTS's original partners, any partner assigned to a contingency fee case would receive credit totaling $200 for each hour worked on the case, and any remaining fees would be split equally between the partners. If MTS's recovery was insufficient to fully credit the partner assigned to the case, then that partner received MTS's full recovery, with no amount allocated to the remaining partners. When MTS contracted to represent Mr. Orr, MTS had no policy to compensate associate attorneys separately for hours worked on contingency fee cases.

[¶6]    In 2013, MTS hired Mr. Moncecchi as a salaried associate. Shortly thereafter, Mr. Moncecchi began assisting Mr. Scoggin on the Orr case. Under Mr. Moncecchi's employment contract, the parties agreed Mr. Moncecchi would receive an annual salary with no performance-based compensation. In 2015, however, MTS offered Mr. Moncecchi a quarterly bonus alongside his annual salary, and Mr. Moncecchi accepted that offer (the Bonus Agreement). The Bonus Agreement provided that Mr. Moncecchi would receive 40% of total receivables over $15,500 he collected each quarter (bonus credit), alongside an annual salary of $52,800.

[¶7]    Under the Bonus Agreement, neither Mr. Moncecchi nor MTS considered whether the receivables used to calculate Mr. Moncecchi's bonus credit included fees collected in contingency fee cases. Approximately one year after the parties entered the Bonus Agreement, however, MTS's partners met again to discuss how to distribute fees collected in contingency fee cases. The partners settled on the following structure (the Contingency Fee Structure):

1.  Of the total fees collected, partners receive bonus credit totaling $250/hour for their work on the case;

2.  From any remaining receivables, associates receive bonus credit totaling $150/hour for their work on the case;

3.  Any remaining fees are split equally between MTS's partners.

The partners agreed that this structure was fair, even if no recovered fees remained to credit associates, because associates were not obligated to indemnify MTS for any losses incurred in contingency fee cases. Moreover, associates would receive their base salary plus any quarterly bonus attributable to hourly fees collected, regardless of the outcome.

[¶8]    When MTS settled the Orr case in 2017, its $40,000 recovery was insufficient to cover the amount credited to Mr. Scoggin under the Contingency Fee Structure.[2] Mr. Moncecchi therefore received no bonus credit for his hours worked on the Orr case.

---

[2] Mr. Scoggin recorded 181.8 hours on the Orr case. When multiplied by $250 under the Contingency Fee

[¶9]  Mr. Moncecchi's employment with MTS terminated near the end of 2017. In 2019, he filed a wage claim against MTS, seeking to recover $7,280 in unpaid wages for his work on the Orr case. In support of his claim, Mr. Moncecchi argued he was entitled to bonus credit totaling $200 per hour for his work on the Orr case based on his hourly rate in non-contingency fee cases. MTS countered, claiming Mr. Moncecchi was entitled to no credit from the Orr case because the Bonus Agreement left open the procedure for crediting Mr. Moncecchi with hours worked in contingency fee cases, and neither MTS nor Mr. Moncecchi contemplated contingency fee cases or the applicable bonus credit rate when entering the Bonus Agreement. The Contingency Fee Structure therefore governed Mr. Moncecchi's right to additional wages from the Orr case. And because MTS's recovery was insufficient to fully compensate Mr. Scoggin under the Contingency Fee Structure, Mr. Moncecchi was entitled to no additional wages from the Orr case.

[¶10] On August 21, 2019, the Department issued a preliminary finding denying Mr. Moncecchi's wage claim. After several appeals and additional denials of his claim, the Department held a contested case hearing where both Mr. Moncecchi and MTS presented evidence before a hearing examiner. Mr. Scoggin represented MTS, Mr. Hunter testified on MTS's behalf, and Mr. Moncecchi represented himself.

[¶11] Following the hearing, on April 17, 2024, the hearing examiner issued an order affirming the denial of Mr. Moncecchi's wage claim. Mr. Moncecchi appealed to the district court, which likewise affirmed. This appeal followed.

## STANDARD OF REVIEW

[¶12]  We review an agency action as if the appeal were directly from the agency, giving no deference to the district court's determinations. *E.g.*, *Polzer v. State ex. rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2025 WY 104, ¶ 6, 576 P.3d 627, 629 (Wyo. 2025) (citing *McCallister v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2022 WY 66, ¶ 7, 510 P.3d 1051, 1054 (Wyo. 2022)). Wyo. Stat. Ann. § 16-3-114(c) (2025) governs our review of administrative actions:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following

Structure, this provided Mr. Scoggin with $45,450 in credit for the Orr case, thereby depleting the full $40,000 Orr recovery under the Contingency Fee Structure.

determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; [or]

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶13] An agency's factual findings after a contested case hearing are reviewed for substantial evidence. *E.g.*, *Wyo. Dep't of Revenue v. PacifiCorp*, 2025 WY 126, ¶ 22, 580 P.3d 491, 498 (Wyo. 2025) (quoting *Jonah Energy LLC v. Wyo. Dep't of Revenue*, 2023 WY 87, ¶ 6, 534 P.3d 902, 905 (Wyo. 2023)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the decision." *PacifiCorp*, 2025 WY 126, ¶ 22, 580 P.3d at 498 (internal quotation marks omitted) (quoting *Contango Res., LLC v. Fremont Cnty.*, 2025 WY 29, ¶ 24, 565 P.3d 167, 174 (Wyo. 2025)). "A finding of fact is supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for it." *Johnston v. Ernst*, 2026 WY 2, ¶ 18, 581 P.3d 1120, 1124 (Wyo. 2026) (internal quotation marks omitted) (quoting *Contango Res., LLC*, 2025 WY 29, ¶ 24, 565 P.3d at 174). "Because the agency 'is the trier of fact and has the duty to weigh the evidence and determine the credibility of witnesses,' we give deference to its factual findings unless they are 'clearly contrary to the overwhelming weight of the evidence on record.'" *Exaro Energy III, LLC v. Wyo. Oil & Gas Conservation Comm'n*, 2020 WY 8, ¶ 10, 455 P.3d 1243, 1248 (Wyo. 2020) (some internal quotation marks omitted) (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 11, 188 P.3d 554, 558 (Wyo. 2008)).

[¶14] Finally, we review de novo the agency's conclusions of law, and we review for abuse of discretion the agency's evidentiary rulings and "mechanisms used to control discovery." *Johnston*, 2026 WY 2, ¶ 19, 581 P.3d at 1124 (quoting *Wearmouth v. Four Thirteen, LLC*, 2024 WY 116, ¶ 20, 558 P.3d 935, 942 (Wyo. 2024)). "[A]dministrative agencies have broad discretion with regard to evidentiary matters in contested case proceedings." *Johnston*, 2026 WY 2, ¶ 19, 581 P.3d at 1124 (quoting *Airtouch*

*Commc'ns, Inc. v. Dep't of Rev., State of Wyo.*, 2003 WY 114, ¶ 55, 76 P.3d 342, 361 (Wyo. 2003)).

## *DISCUSSION*

### I.  *Substantial evidence supported the hearing examiner's finding that Mr. Moncecchi was entitled to no additional compensation for his work on the Orr case.*

[¶15]  Mr. Moncecchi contends that under the Bonus Agreement he was entitled to bonus credit for his work on the Orr case totaling $200 per hour. As the proponent of the wage claim, Mr. Moncecchi bore the burden of proving he was entitled to the claimed wages, and the hearing examiner found that he failed to do so. *See Three Sons, LLC v. Wyo. Occupational Health & Safety Comm'n*, 2007 WY 93, ¶ 17, 160 P.3d 58, 64 (Wyo. 2007). In support of this claim, Mr. Moncecchi makes several arguments, none of which the law or record support.

[¶16]  Mr. Moncecchi contends first that Mr. Scoggin's unsigned, handwritten notes outlining the terms of the Bonus Agreement constituted a written contract between the parties. He does not explain why the form of the agreement is relevant, though. The Bonus Agreement does not fall within the statute of frauds, *see* Wyo. Stat. Ann. § 1-23-105 (2025), and Mr. Scoggin's notes contain no provision indicating that the Bonus Agreement included fees collected in contingency fee cases. Moreover, the hearing examiner found that the Bonus Agreement was an oral contract between the parties based on MTS's oral offer and Mr. Moncecchi's acceptance by continuing to work for MTS. This finding was one of fact, which we find rational due to the parties' testimony at the contested case hearing concerning the circumstances surrounding formation of the Bonus Agreement. *See Positive Progressions, LLC v. Landerman*, 2015 WY 138, ¶ 38, 360 P.3d 1006, 1019 (Wyo. 2015) ("Whether an oral contract exists, the terms and conditions of the oral contract, and the intent of the parties are generally questions of fact.") (quoting *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 250 (Wyo. 2000)). We therefore decline to disturb this finding as it is not "clearly contrary to the overwhelming weight of the evidence on record." *Exaro Energy III, LLC*, 2020 WY 8, ¶ 10, 455 P.3d at 1248.

[¶17]  Mr. Moncecchi argues next that, as an ambiguous contract, the Bonus Agreement should be construed against MTS as the drafter under the doctrine of *contra proferentem*.[3] An ambiguous contract is an obscure agreement caused by indefinite

---

[3] *Contra proferentem* means "against the drafter" and is "[t]he doctrine that, in the interpretation of contracts, ambiguities are to be construed unfavorably to the drafter." *Contra proferentem*, Black's Law Dictionary (12th ed. 2024).

expression or presence of a double meaning. *Drewry v. Brenner*, 2025 WY 121, ¶ 29, 579 P.3d 49, 59 (Wyo. 2025). Mere contractual silence, without producing obvious unclarity regarding the contract's terms, does not constitute an ambiguity. *Sheridan Fire Fighters Local No. 276, IAFF, AFL-CIO, CLC v. City of Sheridan*, 2013 WY 36, ¶ 23, 303 P.3d 1110, 1117 (Wyo. 2013). Based on the parties' testimony at the contested case hearing, the Bonus Agreement was silent as to contingency fee cases, thus evidencing that the parties simply did not contemplate contingency fee cases under the Bonus Agreement. This contractual silence does not make the Bonus Agreement unclear. Mr. Moncecchi instead attempts to stretch the Bonus Agreement beyond its clear, agreed-upon terms, which do not include contingency fee cases. *Contra proferentem* applies only as a rule of last resort when interpreting ambiguous contracts. *Van Vlack v. Van Vlack*, 2024 WY 130, ¶ 40, 560 P.3d 268, 279 (Wyo. 2024). Because we find no ambiguity in the Bonus Agreement, the doctrine does not support Mr. Moncecchi here.

[¶18]   As an oral contract, interpretation of the Bonus Agreement is a question of fact, unless the evidence establishes that the offer, the terms of the offer, and the unconditional acceptance of the offer are without conflict. *Positive Progressions, LLC*, 2015 WY 138, ¶ 38, 360 P.3d at 1019 (quoting *Roussalis*, 4 P.3d at 250). Only then does the interpretation of an oral contract "become a question of law for the court." *Positive Progressions, LLC*, 2015 WY 138, ¶ 38, 360 P.3d at 1019 (quoting *Roussalis*, 4 P.3d at 250). The parties' testimony at the contested case hearing made clear that the Bonus Agreement is subject to a "conflict in the evidence." *Positive Progressions, LLC*, 2015 WY 138, ¶ 38, 360 P.3d at 1019 (quoting *Roussalis*, 4 P.3d at 250). We therefore review whether the hearing examiner's interpretation of the Bonus Agreement was supported by substantial evidence. *E.g.*, *PacifiCorp*, 2025 WY 126, ¶ 22, 580 P.3d at 498.

[¶19]   In the written order dated April 17, 2024, the hearing examiner found as follows:

> As for contingency fee cases, it was clear from the evidence presented that the parties never discussed pending contingency fee cases. MTS did not contemplate contingency fee matters as part of the [Bonus Agreement]. MTS had no prior plan to compensate any associate attorney for hours billed on a contingency matter. Moncecchi did not ask MTS what hourly rate would be used for quarterly bonus calculations. Partner Brian Hunter testified that the [Bonus Agreement] between MTS and Moncecchi did not include contingency fee cases. He was present during the discussion between partners of MTS and Moncecchi. MTS did have a long-standing agreement amongst the partners, on how partner time would be credited. This agreement never mentioned associate attorney compensation.

. . .

> Moncecchi testified that he assumed that he would be credited for work on the Orr case the same way he was credited on pending [hourly fee] workers' compensation matters. Moncecchi testified that MTS agreed to credit him for hours already worked in pending workers' compensation cases. Neither party testified that contingency fee matters were discussed.

> The [Bonus Agreement] left open the procedure for crediting hours on contingency fee matters . . . MTS' solution was to credit the partners [and associates under the Contingency Fee Structure]. Unfortunately, there was insufficient recovery to credit any hours to Moncecchi after crediting [Mr. Scoggin].

> . . .

> Moncecchi failed to establish that he was entitled to be credited a rate of $200.00 per hour. Neither party submitted any evidence to suggest that the rate should have been more than $150.00 . . . Moncecchi never spoke to the partners about what rate he was to be credited in contingency fee cases. For these reasons, Mr. Moncecchi failed to meet his burden of proof.

(citations omitted).

[¶20] After a careful review of the record, we find no support, other than Mr. Moncecchi's own testimony, for his claim that the Bonus Agreement entitled him to any bonus credit—let alone bonus credit totaling $200 per hour—for his work on the Orr case.[4] MTS never informed Mr. Moncecchi that he would receive bonus credit totaling $200 per hour for his work on contingency fee cases, and Mr. Moncecchi never inquired about the rate at which he would be credited for such work.[5] Instead, the terms of the Bonus Agreement, both as determined by the hearing examiner and as outlined in Mr. Scoggin's notes, were completely silent as to whether or how Mr. Moncecchi was to

---

[4] Mr. Moncecchi did offer evidence that his normal hourly rate in non-contingency fee cases was $200 per hour. However, Mr. Moncecchi bore the burden to prove this rate applied in contingency fee cases, and he failed to do so.

[5] In fact, Mr. Moncecchi admitted at the contested case hearing that the parties had established no agreed-upon credit rate for contingency fee cases.

receive bonus credit for his work on contingency fee cases. Due to this silence, only the Contingency Fee Structure governed whether Mr. Moncecchi was entitled to bonus credit for his work on the Orr case. Under the Contingency Fee Structure, because MTS's recovery in the Orr case was insufficient to fully credit Mr. Scoggin for his work, Mr. Moncecchi was to receive nothing additional for any of his work on the case. We therefore hold substantial evidence supported the hearing examiner's finding that Mr. Moncecchi was entitled to no additional compensation for his work on the Orr case. *Johnston*, 2026 WY 2, ¶ 18, 581 P.3d at 1124 ("A finding of fact is supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for it.") (internal quotation marks omitted) (quoting *Contango Res., LLC*, 2025 WY 29, ¶ 24, 565 P.3d at 174).

## II. *The hearing examiner's evidentiary rulings did not constitute an abuse of discretion.*

[¶21] Mr. Moncecchi contests certain evidentiary rulings the hearing examiner made during the proceedings leading to the Department's final order. First, he contends the hearing examiner abused his discretion by admitting an undated, unsigned resolution from a 2007 MTS partner meeting about how MTS's partners would credit time spent on contingency fee cases (Exhibit D). Second, he contends the hearing examiner abused his discretion when he denied four of Mr. Moncecchi's discovery requests.[6]

[¶22] Administrative agencies are not bound by the Wyoming Rules of Evidence. *Painter v. Hallingbye*, 2021 WY 78, ¶ 31 n.7, 489 P.3d 684, 694 n.7 (Wyo. 2021); *Griffin v. State ex rel. Dep't of Transp.*, 2002 WY 82, ¶ 11, 47 P.3d 194, 197 (Wyo. 2002). Instead, the Wyoming Administrative Procedures Act outlines the standards for admitting evidence in administrative proceedings:

> In contested cases irrelevant, immaterial or unduly repetitious evidence shall be excluded and no sanction shall be imposed or order issued except upon consideration of the whole record or such portion thereof as may be cited by any party and unless supported by the type of evidence commonly

---

[6] Alongside these arguments, Mr. Moncecchi claims the hearing examiner's evidentiary rulings denied Mr. Moncecchi due process, and for that reason, the hearing examiner's conclusion was arbitrary and capricious. *See Harborth v. State ex rel. Dep't of Workforce Servs., Worker's Comp. Div.*, 2018 WY 99, ¶ 37, 424 P.3d 1261, 1272 (Wyo. 2018) ("Examples of arbitrary and capricious actions include . . . violating a party's right of due process."). Mr. Moncecchi, however, offers no cogent argument to support his due process claim, and for that reason, we do not consider it. *See, e.g.*, *Johnston*, 2026 WY 2, ¶ 33 n.2, 581 P.3d at 1127 n.2.

relied upon by reasonably prudent men in the conduct of their serious affairs.

Wyo. Stat. Ann. § 16-3-108(a) (2025).

[¶23] Accordingly, "[a]dministrative agencies have broad discretion with regard to evidentiary matters in contested case proceedings." *Johnston*, 2026 WY 2, ¶ 19, 581 P.3d at 1124. An abuse of discretion occurs "only when the [agency's] decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it." *Johnson v. State ex rel. Wyo. Worker's Safety & Comp. Div.*, 2014 WY 33, ¶ 14, 321 P.3d 318, 322 (Wyo. 2014) (quoting *Airtouch Commc'ns, Inc.*, 2003 WY 114, ¶ 55, 76 P.3d at 361).

## A. Exhibit D

[¶24] Mr. Moncecchi argues the hearing examiner abused his broad discretion by admitting Exhibit D. Specifically, he contends Exhibit D was irrelevant because it was silent as to how associates would be compensated for contingency fee cases.

[¶25] The hearing examiner admitted Exhibit D to examine MTS's historical practices for crediting associates with hours worked in contingency fee cases. Whether the parties intended an agreement is a factual question to be decided by the factfinder, who may consider the conduct of the parties before and after forming the contract to discern the parties' intent. *Fuger v. Wagoner*, 2020 WY 154, ¶ 10, 478 P.3d 176, 181 (Wyo. 2020) ("An agreement may be fleshed out by usages to which the parties are subject, by a course of dealing between the parties prior to their agreement, or by a course of performance between them after their agreement.") (quoting *Mantle v. N. Star Energy & Constr., LLC*, 2019 WY 29, ¶ 63, 437 P.3d 758, 782 (Wyo. 2019)); *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 232 (Wyo. 2000) ("In determining whether a contract was formed, we may consider not only the alleged contract but also the conduct of the parties with reference to the alleged contract. Their conduct before and after making the alleged contract 'may shed light on their intent.'") (citations omitted) (first citing *Wheatland Irrigation Dist. v. Dodge*, 387 P.2d 679, 682 (Wyo.1963); and then quoting I E. Allan Farnsworth, Farnsworth on Contracts § 3.8, at 184 (1990)). Exhibit D helped the hearing examiner discern the circumstances and course of dealing preceding the Bonus Agreement by showing how MTS had historically distributed fees collected in contingency fee cases. Because Exhibit D was relevant, it met the standard set forth in Wyo. Stat. Ann. § 16-3-108(a), and the hearing examiner did not abuse his discretion by admitting Exhibit D.

**B.      Denied Discovery Requests**

[¶26]   Next, Mr. Moncecchi contends the hearing examiner abused his broad discretion by denying several of Mr. Moncecchi's discovery requests. The hearing examiner denied these requests as irrelevant, overly broad, and disproportional to the needs of the case.

[¶27]   The first request asked MTS to identify all personal injury actions it worked on since the firm's inception in 2007. The hearing examiner denied this request as overly broad and "not 'proportional to the needs of the case considering the importance of the issues at stake in the action' and 'the amount in controversy.'" Considering this request sought ten years' of information over an employment contract dispute spanning only two years with a relatively low amount in controversy, we cannot say the hearing examiner's decision "shocks the conscience of the court." *Johnson*, 2014 WY 33, ¶ 14, 321 P.3d at 322 (quoting *Airtouch Commc'ns, Inc.*, 2003 WY 114, ¶ 55, 76 P.3d at 361). The hearing examiner had broad discretion to tailor discovery as he saw fit, and he did so reasonably here. *Johnston*, 2014 WY 33, ¶ 19, 581 P.3d at 1125.

[¶28]   The second, third, and fourth requests asked MTS to produce documents relating to other cases and the applicable hourly rates charged by Mr. Moncecchi and MTS's partners in those cases. The hearing examiner limited these requests to information relating to the Orr case and denied the requests regarding other cases as irrelevant. Given that the Orr case was a contingency fee matter, we agree that any request for information relating to hourly fee cases was irrelevant for determining whether and how to credit Mr. Moncecchi for his work on contingency fee cases. Any information relating to other cases was also irrelevant for determining whether the Orr case provided MTS with sufficient recovery to credit both Mr. Scoggin and Mr. Moncecchi for their hours worked on that case. We therefore find no abuse of discretion as the hearing examiner reasonably denied Mr. Moncecchi's discovery requests that exceeded the scope of the issues presented.

## *CONCLUSION*

[¶29]   After a careful review of the record, we conclude substantial evidence supports the hearing examiner's finding that Mr. Moncecchi was entitled to no additional compensation from the Orr case, and the hearing examiner did not abuse his discretion when making the challenged evidentiary rulings.

[¶30]   Affirmed.